# ATTACHMENT

# A

*Redacted Docket Materials*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH ▮▮▮▮▮▮<br>THAT IS STORED AT PREMISES CONTROLLED BY<br>VERIZON WIRELESS | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No: 1:18-mj-0001
Assigned To: Chief Judge Beryl A. Howell
Date Assigned: 1/4/17
Description: Search and Seizure Warrant

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ New Jersey _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ U.S. Chief Judge Beryl A. Howell _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     JAN 40 2018  11:18AM              *By 4. Howell*
                                                                                    *Judge's signature*

City and state:        Washington, D.C.                        U.S. Chief Judge Beryl A. Howell
                                                                                    *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to all information and accounts, including any cloud or backup accounts, associated with ▮▮▮▮▮▮▮▮ that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by Verizon Wireless

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier, including attachments;

b.      All existing printouts from original storage of all of the text messages described above;

c.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from January 1, 2013 to present;

d.      All geolocation information, including any Glympse data;

e.      Any backup, cloud, or stored information containing information, voicemail, text messages, attachments, or logs, associated with the account;

f.      All records indicating the use of a remote messaging service by the user of the account;

g.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message, including header information;

h.      All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

i.      All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j.      All records pertaining to communications between Verizon Wireless and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.      Information to be Seized

The items, information, and data to be seized are fruits, evidence, information relating to, contraband, or instrumentalities of violations of 18 U.S.C. § 641, 18 U.S.C. § 1001, and 18 U.S.C. § 1512(c) since January 1, 2013 to date, for each account or identifier listed on Attachment A, including information pertaining to the following matters:

2

1.  Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

2.  Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

3.  Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

4.  Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

5.  Evidence that persons have obstructed justice, violated 18 U.S.C. § 1001, or provided false or misleading information to law enforcement or Congress;

6.  Evidence of communications with ███████████████████████

7.  Evidence of contact with individuals with whom the cellular device's owner or user may have communicated (sent or received) information belonging to the U.S. government;

8.  The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s);

9.  Address books, buddy lists and complete contact information of known associates.

10. The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property, information, or classified information, including records that help reveal their whereabouts;

3

11. items, information, and data relating to ████████████████ including any that reveal or relate to any contact or relationship between ████████████████████ ████████

12. items, information, and data containing, constituting, or referring to sensitive U.S. government information or classified National Security Information;

13. evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

14. identification of any electronic devices being associated with the account;

15. all e-mail accounts, social media and electronic applications associated with the account user by cookies or any other means;

16. passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account;

17. information suggesting selective deletion of material on the account, or obstruction of justice; and

18. records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4

### III.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Provider and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the Provider that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

5

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Verizon Wireless, and my official title is _____. I am a custodian of records for Verizon Wireless. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Verizon Wireless and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes/megabytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of Verizon Wireless; and

    c.    such records were made by Verizon Wireless as a regular practice.

    I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____        _____
Date                             Signature

**FILED**

JAN 0 4 2018

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
█████████ THAT IS STORED AT
PREMISES CONTROLLED BY
VERIZON WIRELESS

Case No: 1:18-mj-0001
Assigned To: Chief Judge Beryl A. Howell
Date Assigned: 1/4/17
Description: Search and Seizure Warrant

## ORDER REQUIRING NON-DISCLOSURE
## UNDER 18 U.S.C. § 2705(b)

The United States has filed a motion to require Verizon Wireless, an electronic communication service provider and/or a remote computing service located at Bedminster, NJ, not to disclose the existence or contents of the Warrant pursuant to 18 U.S.C. § 2705(b).

Court finds reasonable grounds to believe that such disclosure will result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation. *See* 18 U.S.C. § 2705(b)(5)

It is, therefore, this _4th_ day of January, 2018,

ORDERED that, pursuant to 18 U.S.C. § 2705(b), Verizon Wireless and its employees shall not disclose the existence or content of the Warrant to any other person (except attorneys for Verizon Wireless for the purpose of receiving legal advice) until further order of the Court.

_Beryl A. Howell_
BERYL A. HOWELL
CHIEF JUDGE

Copy to:

████████████████████

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ▮▮▮▮▮▮▮ THAT IS STORED AT PREMISES CONTROLLED BY VERIZON WIRELESS | Case No: 1:18-mj-0001<br>Assigned To: Chief Judge Beryl A. Howell<br>Date Assigned: 1/4/17<br>Description: Search and Seizure Warrant |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, ▮▮▮▮▮▮▮ being first duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Verizon Wireless, a wireless provider located at 180 Washington Valley Road, Bedminster, NJ 07921. The information to be searched is described in the following paragraphs and in **Attachment A** ("TARGET'S ACCOUNT"). This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Verizon Wireless to disclose to the government copies of the information (including the content of communications) further described in **Section I of Attachment** B. Upon receipt of the information described in **Section I of Attachment B**, government-authorized persons will review that information to locate the items described in **Section II of Attachment B**, using the procedures described in **Section III of Attachment B**.

2.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████████████████████ I am responsible for investigating offenses involving espionage, illegal agents of foreign powers, media leaks of classified national security information, and the unauthorized retention and disclosure of classified national security information, including defense-related information.

3.      I am familiar with the facts and circumstances set forth below from my personal participation in this investigation, my review of documents and other evidence, as well as publicly-available information, and my conversations with other law enforcement officers.  Because this affidavit is being submitted for the limited purpose of supporting an Application for a Search Warrant, I am setting forth only those facts and circumstances necessary for that purpose.  Unless otherwise indicated, all written and oral statements referred to herein are set forth in substance and in part, rather than verbatim.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 641 (conversion of U.S. government property), 18 U.S.C. § 1001 (false statements), 18 U.S.C. §1512(c) (obstruction of justice) and other crimes have been committed by ██████████ and other known and unknown persons.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below,

acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237. ███████████████████████████

███████████████████████████

## PROBABLE CAUSE

6.      I believe that the facts and circumstances set forth below establish probable cause to believe that since at least ████████████ and through approximately ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ – the TARGET'S ACCOUNT – to disclose or facilitate the disclosure of sensitive information to others that is the property of the United States government, and on occasion classified national security information ("NSI"), related to the national defense, including ████████████████████████████ There is probable cause to believe that such disclosures or facilitation of disclosures by ██████ were made for the purpose of ████████████████████████████, and therefore constitute a conversion of United States government property, *i.e.*, sensitive and classified information, for ████████████ or the use of another, in violation of 18 U.S.C. § 641. I further believe that these facts and circumstances establish probable cause that ███████ gave knowing and intentional false statements to the FBI in violation of 18 U.S.C. § 1001 on or about ████████████

7.      Pursuant to Executive Order 13526, NSI shall be classified at the TOP SECRET level when its unauthorized disclosure reasonably could be expected to cause exceptionally grave damage to the national security. NSI shall be classified at the SECRET level when its unauthorized disclosure reasonably could be expected to cause serious damage to the national security.



8.

9.

10.

███████████████████████████████████████████████████████████

████████████

11. ███████████████████████████ granted ██████ an initial TOP SECRET clearance with access to Sensitive Compartmented Information ("TS/SCI") on or about ██████ ██████ following a security background investigation conducted by the FBI.[1] Subsequent periodic background investigations on ████████ were successfully completed in or about █████████ ███████████████████████████████ has been granted access to ████████████ █████████████████████████ Based on my experience, I know that an individual who is granted a security clearance, and ██████████████ must in each case sign a form certifying that he understands the restrictions on handling and communicating classified information, and the criminal penalties for violating those restrictions, including 18 U.S.C. § 641.

12. According to an individual who has personal knowledge of the ██████ SCIF, with whom I have spoken, █████████████████████████████████ ████████████████████████████████████ Electronic devices such as personal smartphones are not permitted within a SCIF and must be left outside the SCIF. At the entrance to the ██████ SCIF, there are boxes where a person may secure such an electronic device before entering the SCIF.

13. ███████████████████████████████ ███████████████████████████████████ ███████████████████████████████████

_____

████████████████████████████████████████



14.

15.

I believe that

16.    Verizon Wireless subscriber information confirms that ██████ has been the subscriber of telephone number (██████████████

17.



18.



I have reviewed

From an individual having knowledge of

Based on the content of

information which could only have been provided by a person, or persons, with intimate inside knowledge of ▮▮▮▮▮▮▮ including those involving sensitive U.S. government information and classified NSI.

19.

20.   I have reviewed a number of

██████████████████████████████████████████████████████████

████████████████████

**RELATIONSHIP BETWEEN** ████████████████████

21.    Based on ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████

22.    Toll records for ████████ personal smartphone bearing number ██████████ the TARGET'S ACCOUNT – for the period from ███████████████████████████ show that the TARGET'S ACCOUNT and a particular phone number exchanged approximately ████████ "Short Message Service" ("SMS") messages – also known as text messages – (accounting for ████ of ████████'s total text messages) and 556 phone calls (accounting for ████ of ████████ total phone calls).  Thus, for the period from ███████████████████████ ████████ exchanged communications with that particular phone number a total of more than ████████ times, or an average of more than ████████████ – far exceeding the total of ████████ remaining personal cellphone communications.  ████████████████████ identified that particular phone number as ████████████████████████████████████████████ Recent investigation has confirmed that that particular phone number is currently ████████████ personal cellphone number.

23.    A pen register and trap and traces device ("pen-trap device") activated on the TARGET'S ACCOUNT on or about ████████████ showed that the TARGET'S ACCOUNT and ████████████████████████ have remained in regular contact through ████████████

9

24.    Your affiant is aware that a web-based application called "Verizon Messenger on the Go" can be installed on a computer and can allow an individual to access and send SMS messages through his or her cellphone from the computer by use of the application. Your affiant is also aware that the Verizon Messenger on the Go application is sometimes referred to by other names, including "Verizon Messages Anywhere" and "Message +." This application would allow, for example, a person inside a SCIF to send SMS messages through his or her personal cellphone account from an unclassified computer that has the application downloaded onto the computer, even though the person may be located in a SCIF and the cellphone located outside the SCIF. (Electronic devices such as personal cellphones are not permitted inside SCIF space, and must be left outside.) I have been made aware by Verizon that the application may download SMS messages onto both the computer and the cellphone, and that the web-based application would likely contain some or all of the SMS messages used by the application, depending on the user's settings.

25.    On November 14, 2017, Verizon Wireless Legal Department provided SMS returns for the Federal Search and Seizure Warrant for TARGET'S ACCOUNT ("VW Warrant"), but did not identify which SMS were produced from directly from Verizon Wireless's servers or through Verizon Messenger on the Go. Based on information provided by Verizon Wireless in response to the VW Warrant, and your affiant's knowledge about Verizon Wireless's ability to preserve or produce historic SMS messages unless a user is using "Verizon Messenger on the Go," your affiant has concluded that ▓▓▓▓ has been using "Verizon Messenger on the Go" to send SMS messages to multiple people, including ▓▓▓▓▓▓

26.    According to ▓▓▓ records which I have reviewed, on ▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10

27. According to ▮▮▮ records which I have reviewed, on ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ issued in their respective names.

28. According to ▮▮▮ records which I have reviewed, on ▮▮▮▮▮▮▮▮

29. On ▮▮▮▮▮▮▮▮ met ▮▮▮▮▮▮▮▮ with an individual who I know to be a U.S. government law enforcement officer, who may not have identified himself to ▮▮▮▮▮ as a government employee. This law enforcement officer is not associated with, and was not acting in connection with, or on behalf of, the FBI or the FBI investigation described in this Affidavit. According to this law enforcement officer, when he asked

According to the law enforcement officer, the topic was not further discussed. The law enforcement officer later reported this interaction to the FBI. I have observed that between ▮▮▮ ▮▮▮▮▮▮▮▮ there was a temporary, but marked decline in communications exchanged between ▮▮▮▮ personal smartphone, the TARGET'S ACCOUNT, and

11

███████ personal cellphone.  According to ████████████████████████████

████████ for a portion of this period ████████████████████████████████

30.     ████████████████████████████████  According to ████ records,



31.     On ████████████ ████████ submitted to a voluntary interview with the FBI

████████████████████ During the interview, ████████ was warned any false statements he

made to the FBI could be punishable under 18 U.S.C. § 1001.  Starting from the beginning of the

interview, ████████ denied he had any official, professional, or personal relationships with ████

████████████████████████████████████████████ Thereafter, ████████

signed an "Investigative Questionnaire" indicating ████████████████████████████

████████████████████████████████████████████████████████████████



32. ▇▇▇▇ denied providing classified or unclassified information regarding ▇▇ to

33. ▇▇▇▇



34.

35.

The Classified Document was classified TOP SECRET overall because it contains both SECRET and TOP SECRET information. The nature of the Classified Document itself is classified at the SECRET level. A specific SECRET fact ("the Classified Fact"[4]) is

The paragraph in the Classified Document containing the Classified Fact was clearly marked "S//NF", indicating that the information was classified at the SECRET level and not for dissemination to any foreign government. The Classified Fact was, and remains, classified at the SECRET level.

---

[4]    The Classified Document and the Classified Fact are identified in the Classified Annex to this Affidavit. See the "Classified Annex" section below.

14

The DOJ agreed to provide copies of the Classified Document ███████████████ on a "read-only" basis.

36.    ███████████████ the Classified Document was transported to the ████ SCIF and was read by ████████████████████████████████████ This was the first time that the Classified Fact was disclosed to ████████████████████ ████████████████████

37.    ████████████████████████████████████████████ ████████████████████████████████████████████ ███████ ████████████████████████████████

38.    Although ████████████████ cited the individual ████████████ ████████████████████████████████ I believe that ████████ already knew the Classified Fact ████████████████████████████████ ████████████████████ Furthermore, based on information developed in this investigation, I submit there is probable cause to believe that ████████ disclosed the Classified Fact to ████████

   a.    According to ████████ personal smartphone toll records, the TARGET'S ACCOUNT and ████████ personal cellphone exchanged ███ SMS communications during ████████ In addition, on the evening of ████████ ████ there occurred a ███-minute phone call between the TARGET'S ACCOUNT and ████████ personal cellphone.

   b.    On the night of ████████ the date of the ████████████ ████████ at a particular time known to me, ████████████ ████████████████████

15



I believe this exchange unequivocally indicates that ▌▌▌▌▌ knew, ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ as contained in the Classified Fact.

    c.  According to ▌▌▌▌▌ personal smartphone toll records, the TARGET'S ACCOUNT and ▌▌▌▌▌▌▌ personal cellphone exchanged ▌▌▌ SMS communications during ▌▌▌▌▌▌ In addition, on ▌▌▌▌▌▌▌ there occurred a phone call between the TARGET'S ACCOUNT and ▌▌▌▌▌▌s personal cellphone lasting ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

    d.  ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ I believe that this posting also indicates that ▌▌▌▌▌▌ knew the Classified Fact ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

## OTHER INDICIA OF ███ DISCLOSURES

39. ████████████████████████ according to ████ personal smartphone toll records, ██ phone calls between the TARGET'S ACCOUNT and ████████ personal cellphone occurred: (1) a first call, lasting approximately ██ minutes; (2) a second call, ████████████████ lasting approximately ██ minutes; and (3) a third call, lasting approximately ██ minutes. On the morning of ████████████ the TARGET'S ACCOUNT and ██████ had a phone call lasting approximately ██ minutes, and they exchanged ██ SMS communications during that day. According to the Verizon Wireless records for TARGET'S ACCOUNT, on ████████ the following SMS communications were sent between TARGET'S ACCOUNT and ████████



Your affiant is aware based on this investigation that the above reference to ▉ in the

SMS is ▉▉▉▉▉▉▉▉▉

  40. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

commented:



18

41.    According to the Verizon Wireless records for TARGET'S ACCOUNT, on

████████████ the following SMS messages were sent between TARGET'S ACCOUNT and

████████



42.    ████████████████████████████████████████████

████████████████████████████████████████████

43.    According to the pen-trap device, on ███████████████████ and ███████ exchanged approximately ██ SMS messages, approximately █ of which were between ███████████ ████████████ at approximately ████████████



44.    Starting on or about ███████████ the FBI communicated with ██████ to set up the voluntary interview, and directly communicated with him on ███████████████ the interview on ████████████ According to the pen-trap device, ████████████ exchanged approximately ██ SMS messages on ███████████ approximately ██ SMS messages on ███████████ and █ SMS messages on ███████████. On ██████████ ████████████ sent ████████ SMS messages at approximately ████████████████ ████████████████████ voluntary interview with the FBI started at approximately

20



45.

SSCI offices by SSCI.  Since ▮▮▮▮▮ interview on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮ have continued communication through use of the TARGET'S ACCOUNT.  Between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have exchanged ▮▮▮ phone calls (one call appears to have been unanswered by ▮▮▮▮.  Based on the pattern of communications, your affiant believes ▮▮▮▮▮▮▮▮▮ have been conversing about this investigation, and likely endeavoring to frustrate this ongoing criminal investigation.

46.    There is probable cause to believe that the TARGET'S ACCOUNT identified in Attachment A contains fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 18 U.S.C. § 641 (conversion of government

21

property), 18 U.S.C. § 1001(false statements), 18 U.S.C. §1512(c) (obstruction of justice) and other crimes.

## CLASSIFIED ANNEX

47.    I represent to the Court that the Classified Annex to this Affidavit, which is incorporated herein by reference and which identifies the true names of ███████████ ██████████████████████ as well as the true nature of the Classified Document and the Classified Fact, is classified at the SECRET level because ████████████████ ███████████████████████ when read together with the information contained in this Affidavit, would reveal classified information at the SECRET level, and (2) the true nature of the Classified Document and the Classified Fact remain classified at the SECRET level. When separated from the Classified Annex, this Affidavit is not classified. After providing the Court with this Affidavit, including the Classified Annex, *in camera* for the Court's review for purposes of the Application for a Search Warrant, I request that the FBI be permitted to maintain the Classified Annex in its files, on behalf of the Court as part of the record. I further request that the Court order that this Affidavit, including the Classified Annex, remain under seal, except that the agents and other personnel, including prosecutors, involved in execution of the requested Warrant, who have the necessary security clearance, will review the Classified Annex in the course of their duties. In addition, the Affidavit, including the Classified Annex, may be disclosed as necessary to accomplish the Special Search Procedures set forth below.

## BACKGROUND CONCERNING WIRELESS ACCOUNTS

48.    In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages

22

for Verizon Wireless subscribers may be located on the computers of Verizon Wireless. Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

49.     On or about December 11, 2017, the FBI sent a preservation letter to Verizon Wireless seeking the preservation of specific electronic material, including text message content and logs, and other files, on servers maintained and/or owned by Verizon Wireless, from ███████████████████████████ on the TARGET'S ACCOUNT. On or about December 14, 2017, the FBI sent a preservation letter to Verizon Wireless seeking the preservation of specific electronic material, including text message content and logs, and other files, on servers maintained and/or owned by Verizon Wireless, ████████████████ ██████████ on the TARGET'S ACCOUNT. On or about December 18, 2017, the FBI sent a preservation letter to Verizon Wireless seeking the preservation of specific electronic material, including text message content and logs, and other files, on servers maintained and/or owned by Verizon Wireless, ██████████████████████ on the TARGET'S ACCOUNT. As discussed above, your affiant is also aware that Verizon Wireless records indicate that the subscriber to the TARGET'S ACCOUNT, described in Attachment A, uses a mobile messaging application which permits Verizon Wireless to retain the TARGET'S ACCOUNT text messages, electronic data, message logs, voice mails, and attachments for several months. If the user of the Verizon Messenger on the Go application has set up a backup function or service, Verizon Wireless can retain text messages, electronic data, message logs, voice mails, and attachments text messages indefinitely.

50.     Your affiant is aware that Verizon Wireless also offers other electronic features to its remote messaging applications such as Verizon Messenger on the Go, including a geolocation

data feature that allows users to share or see each other's real-time physical location that is sometimes referred to as "Glympse," and a calling feature that allows the user to make or receive voice or video calls through a tablet or smart watch. Verizon Wireless also offers a backup ,or cloud feature, which allows users to back up and sync their electronic devices. The backup feature permits the User to store contacts, electronic data, text messages and attachments, and logs and voicemail to servers and electronic storage controlled by Verizon Wireless.

51.    Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Verizon Wireless for weeks or months.

52.    Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

53.    Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as

24

local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

54.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

55.     Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

56.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

57.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

58.     As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user

26

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

59.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other

information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B consistent with the special review conditions listed above.

## CONCLUSION

60.    Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on **Verizon Wireless** who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,



Subscribed and sworn to before me
on January ___, 2018

_____
Beryl A. Howell
UNITED STATES DISTRICT COURT
CHIEF JUDGE

28

## ATTACHMENT A

### Property to Be Searched

This warrant applies to all information and accounts, including any cloud or backup accounts, associated with ████████████ that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by Verizon Wireless

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier, including attachments;

b.    All existing printouts from original storage of all of the text messages described above;

c.    All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from January 1, 2013 to present;

d.    All geolocation information, including any Glympse data;

e.    Any backup, cloud, or stored information containing information, voicemail, text messages, attachments, or logs, associated with the account;

f.    All records indicating the use of a remote messaging service by the user of the account;

g.    All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message, including header information;

h.    All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

i.    All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

j.    All records pertaining to communications between Verizon Wireless and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.    Information to be Seized

The items, information, and data to be seized are fruits, evidence, information relating to, contraband, or instrumentalities of violations of 18 U.S.C. § 641, 18 U.S.C. § 1001, and 18 U.S.C. § 1512(c) since January 1, 2013 to date, for each account or identifier listed on Attachment A, including information pertaining to the following matters:

1. Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

2. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

3. Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

4. Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

5. Evidence that persons have obstructed justice, violated 18 U.S.C. § 1001, or provided false or misleading information to law enforcement or Congress;

6. Evidence of communications with ███████████████████████

7. Evidence of contact with individuals with whom the cellular device's owner or user may have communicated (sent or received) information belonging to the U.S. government;

8. The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s);

9. Address books, buddy lists and complete contact information of known associates.

10. The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property, information, or classified information, including records that help reveal their whereabouts;

3

11. items, information, and data relating to ███████████████, including any that reveal or relate to any contact or relationship between ████████████████ █████████;

12. items, information, and data containing, constituting, or referring to sensitive U.S. government information or classified National Security Information;

13. evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

14. identification of any electronic devices being associated with the account;

15. all e-mail accounts, social media and electronic applications associated with the account user by cookies or any other means;

16. passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account;

17. information suggesting selective deletion of material on the account, or obstruction of justice; and

18. records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

4

### III.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Provider and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the Provider that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## BUSINESS RECORDS PURSUANT TO FEDERAL RULE
## OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by Verizon Wireless, and my

official title is _____. I am a custodian of records for Verizon

Wireless. I state that each of the records attached hereto is the original record or a true duplicate

of the original record in the custody of Verizon Wireless and that I am the custodian of the

attached records consisting of _____ (pages/CDs/kilobytes/megabytes). I further state that:

    a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

    b.     such records were kept in the ordinary course of a regularly conducted business

activity of Verizon Wireless; and

    c.     such records were made by Verizon Wireless as a regular practice.

    I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

_____      _____

Date                  Signature

UNCLASSIFIED//FOR OFFICIAL USE ONLY
~~SECRET//NOFORN/FISA~~

## <u>CLASSIFIED ANNEX TO AFFIDAVIT</u>

CLASSIFIED DOCUMENT #1:

FACT #1:



**FILED**

JAN 04 2018

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ▮▮▮ ▮▮▮ THAT IS STORED AT PREMISES CONTROLLED BY VERIZON WIRELESS | Case No: 1:18-SWP-0001<br>Assigned To: Chief Judge Beryl A. Howell<br>Date Assigned: 1/4/17<br>Description: Search and Seizure Warrant<br><br>**Filed Under Seal** |

## ORDER

The United States has filed a motion to seal the above-captioned warrant and related documents, including the application and affidavit in support thereof and all attachments thereto and other related materials (collectively, the "Warrant").

The Court finds that the United States has established that a compelling governmental interest exists to justify the requested sealing, and that there is reason to believe that disclosure of the Warrant would jeopardize the investigation by providing the subject of the investigation an opportunity to destroy evidence or flee and jeopardize the investigation by disclosing the details of facts known to investigators, the identities of witnesses, and the investigative strategy.

The Court further finds that a sufficient showing of good cause has been made for the continued sealing of the Classified Annex to the Search Warrant Affidavit, which the FBI shall maintain in its secure files after review by the Court *in camera*, in order to help ensure the protection of classified information and the integrity of the government's investigation.

It is, therefore, this _____4th_____ day of January 2018,

IT IS ORDERED that the motion is hereby GRANTED, and that the warrant, the application and affidavit in support thereof, all attachments thereto and other related materials, the instant motion to seal, and this Order be SEALED until further order of the Court, except as

necessary to facilitate the enforcement of criminal law, including the execution of the arrest warrants, or to any federal official to assist the official receiving the information in the performance of that official's duties.

IT IS FURTHER ORDERED that the Classified Annex shall be maintained, under seal, in the FBI's secure files, on behalf of the Court, as a part of the record.

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order upon request, and shall provide copies of this Order to the Agency upon request.

_____
BERYL A. HOWELL
CHIEF JUDGE

Copy to:

2

AO 93 (Rev 11/13) Search and Seizure Warrant (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 1:18-mj-0001 | 1/4/2018    12:32pm | See details in order |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

The Search Warrant and Order Requiring Non-Disclosure was served via fax number 1-800-345-6720 to Verizon wireless Legal Department on January 4, 2018 at approximately 12:32 pm. Verizon Wireless Legal Department is processing the order and will provide the results to ████████████

**FILED**

JAN 1 2 2018

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  1/12/2018