# ATTACHMENT

# A

*Redacted Docket Materials*

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH ONE APPLE ID<br>ACCOUNT  THAT IS STORED AT PREMISES<br>CONTROLLED BY APPLE, INC. | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:19-sc-557<br>Assigned To: Chief Judge Beryl A. Howell<br>Date Assigned: 03/13/2019<br>Description: Search and Seizure Warrant |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

   An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

   I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

   **YOU ARE COMMANDED** to execute this warrant on or before _____ March 27, 2019 _____ *(not to exceed 14 days)*
   ☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

   Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

   The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Beryl A. Howell, Chief Judge _____ .
   *(United States Magistrate Judge)*

   ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     03/13/2019 2:00 pm

Judge's signature

City and state:     Washington, D.C.

Beryl A. Howell, Chief Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with DSID  and email address ███████████████████ (the "iCLOUD ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.    For the time period **April 1, 2017 until August 1, 2018** the contents of all communications and related transactional records for all Apple services used by an Account subscriber/user (such as e-mail services, contact lists, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services including, **iCLOUD records and updates,** including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies). This includes iMessage (instant messages); FaceTime (video calls); iCloud, a file hosting, storage, and sharing service, which allows users to store, access, share, and synchronize data across various digital devices, for example iCloud Photo Library and My Photo Stream for images and videos, iCloud

Drive for documents, including presentations and spreadsheets, iCloud Tabs for synchronizing webpages, iWorks Apps (a suite of productivity apps), and iCloud Keychain (to store various usernames and passwords, credit card information, and Wi-Fi network information); Game Center (Apple's social gaming network, which allows users of Apple devices to play and share games with each other); Find My iPhone (remote location tracking and access to devices); Location Services (which allows apps and websites to access and use information about a user's approximate location); shared drives and document retention (including Time Capsule services), and App Store and iTunes Store (which allow users to purchase and download digital content, *e.g.*, applications) records, including for all devices utilizing the iCloud service;

      b.      For the time period **April 1, 2017 until August 1, 2018,** the contents of all other data and related transactional records for all Apple services used by an Account user (such as e-mail services, contact lists, address books, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, including iCloud and **all services referenced in paragraph (a) above,** including any information generated, modified, or stored by user(s) or Apple in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

      c.      For the time period **April 1, 2017 until August 1, 2018:** All records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

      d.      For the time period **April 1, 2017 until August 1, 2018:** All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history

2

of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.      All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI"), mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying

3

any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN");

g.     Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any Apple account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.     For the time period **April 1, 2017 until August 1, 2018**:   All records of communications between Apple and any person regarding the Account, including contacts with support services and records of actions taken;

i.     Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel); and

j.     The contents of all emails, notes, data, and electronic messages associated with the account, including stored or preserved copies of data, documents, emails and messages sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

4

k.      The contents of all instant messages associated with the account **April 1, 2017 until August 1, 2018**, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

l.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

m.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

5

n.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

o.      All records pertaining to the types of service used, including application purchases, downloads, updates and backup records;

p.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken;

q.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).;

r.      All applications downloaded, used, or updated using Apple services, including iTunes and iCloud, including dates of acquisition, all updates, and any data associated with such applications which are in control of Apple;

Within **14 DAYS** of the issuance of this warrant, Apple shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



6

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C §§ 641, 793(d), and (e) from April 1, 2017 until August 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Evidence that relates to the User's possession, conversion, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining of information owned by the U.S. government on his personal devices;

b.    Evidence that relates to the User's communication with reporters about improperly possessing, converting, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining U.S. government information;

c.    Evidence that relates to the User's knowledge that U.S. government information was being improperly possessed, converted, sold, conveyed, disposed, communicated, delivered, transmitted, received, concealed or obtained, including any communications with persons about coordinating, planning, or discussing such actions;;

d.    Evidence that the User was using encrypted applications, disappearing communications, or communicating with reporters using encryption keys or technologies;

e.    The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s);

7

f.      Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

g.      Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

h.      **Evidence indicating the subscriber's state of mind as it relates** to the crime under investigation;

i.      Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

j.      **Information that constitutes evidence indicating the Account user's state of mind,** *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

k.  All evidence related to communications with reporters, efforts to obtain classified information, access to classified information, communications with U.S. intelligence agencies, and any instruction, discussion, or knowledge of other persons passing U.S. government information to persons without legal right to access or review.

l.  Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

m.  Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

n.  Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

o.  Evidence that persons have obstructed justice, deleted information, or provided false information to the U.S. government (to facilitate access to government information);

p.  Address books, buddy lists and complete contact information of known associates.

q.  The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property, information, or classified information, including records that help reveal their whereabouts;

r.  items, information, and data containing, constituting, or referring to U.S. government information or classified information;

s.  evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

t.  identification of any electronic devices being associated with the account;

u.  passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account; and

v.  records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

### III.     Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Apple and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Apple that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by [**PROVIDER**], and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of

[**PROVIDER**]. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of [**PROVIDER**], and they were made by [**PROVIDER**] as a regular practice; and

b.     such records were generated by [**PROVIDER'S**] electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of [**PROVIDER**] in a manner to ensure that they are true duplicates of the original records; and

3

2.      the process or system is regularly verified by **[PROVIDER]**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____

Date                                              Signature

4

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH ONE APPLE ID<br>ACCOUNT  THAT IS STORED AT PREMISES<br>CONTROLLED BY APPLE, INC. | Case No. 1:19-sc-557<br>Assigned To: Chief Judge Beryl A. Howell<br>Date Assigned: 03/13/2019<br>Description: Search and Seizure Warrant |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641; | Conversion of U.S. government property; |
| 18 U.S.C. § 793 | Gathering, transmitting or losing defense information |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 03/13/2019 _____

City and state:  Washington, D.C.

*Beryl A. Howell* signature
*Judge's signature*

Beryl A. Howell, Chief Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with DSID  and email address ████████████████ (the "iCLOUD ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Apple**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.     For the time period **April 1, 2017 until August 1, 2018** the contents of all communications and related transactional records for all Apple services used by an Account subscriber/user (such as e-mail services, contact lists, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services including, **iCLOUD records and updates,** including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies). This includes iMessage (instant messages); FaceTime (video calls); iCloud, a file hosting, storage, and sharing service, which allows users to store, access, share, and synchronize data across various digital devices, for example iCloud Photo Library and My Photo Stream for images and videos, iCloud

Drive for documents, including presentations and spreadsheets, iCloud Tabs for synchronizing webpages, iWorks Apps (a suite of productivity apps), and iCloud Keychain (to store various usernames and passwords, credit card information, and Wi-Fi network information); Game Center (Apple's social gaming network, which allows users of Apple devices to play and share games with each other); Find My iPhone (remote location tracking and access to devices); Location Services (which allows apps and websites to access and use information about a user's approximate location); shared drives and document retention (including Time Capsule services), and App Store and iTunes Store (which allow users to purchase and download digital content, *e.g.*, applications) records, including for all devices utilizing the iCloud service;

b.       For the time period **April 1, 2017 until August 1, 2018,** the contents of all other data and related transactional records for all Apple services used by an Account user (such as e-mail services, contact lists, address books, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, including iCloud and **all services referenced in paragraph (a) above,**  including any information generated, modified, or stored by user(s) or Apple in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

c.       For the time period **April 1, 2017 until August 1, 2018:** All records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

d.       For the time period **April 1, 2017 until August 1, 2018:** All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history

2

of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.      All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.      All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI"), mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying

3

any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN");

g.    Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any Apple account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.    For the time period **April 1, 2017 until August 1, 2018**:    All records of communications between Apple and any person regarding the Account, including contacts with support services and records of actions taken;

i.    Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel); and

j.    The contents of all emails, notes, data, and electronic messages associated with the account, including stored or preserved copies of data, documents, emails and messages sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

4

k.      The contents of all instant messages associated with the account **April 1, 2017 until August 1, 2018**, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

l.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

m.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

n.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

o.      All records pertaining to the types of service used, including application purchases, downloads, updates and backup records;

p.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken;

q.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).;

r.      All applications downloaded, used, or updated using Apple services, including iTunes and iCloud, including dates of acquisition, all updates, and any data associated with such applications which are in control of Apple;

Within **14 DAYS** of the issuance of this warrant, Apple shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



6

II.    **Information to be seized by the government**

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C §§ 641, 793(d), and (e) from April 1, 2017 until August 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Evidence that relates to the User's possession, conversion, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining of information owned by the U.S. government on his personal devices;

b.    Evidence that relates to the User's communication with reporters about improperly possessing, converting, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining U.S. government information;

c.    Evidence that relates to the User's knowledge that U.S. government information was being improperly possessed, converted, sold, conveyed, disposed, communicated, delivered, transmitted, received, concealed or obtained, including any communications with persons about coordinating, planning, or discussing such actions;;

d.    Evidence that the User was using encrypted applications, disappearing communications, or communicating with reporters using encryption keys or technologies;

e.    The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s);

7

f.    Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

g.    Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

h.    Evidence indicating the subscriber's state of mind as it relates to the crime under investigation;

i.    Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

j.    Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

k.    All evidence related to communications with reporters, efforts to obtain classified information, access to classified information, communications with U.S. intelligence agencies, and any instruction, discussion, or knowledge of other persons passing U.S. government information to persons without legal right to access or review.

l.    Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

8

m. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

n. Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

o. Evidence that persons have obstructed justice, deleted information, or provided false information to the U.S. government (to facilitate access to government information);

p. Address books, buddy lists and complete contact information of known associates.

q. The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property, information, or classified information, including records that help reveal their whereabouts;

r. items, information, and data containing, constituting, or referring to U.S. government information or classified information;

s. evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

t. identification of any electronic devices being associated with the account;

u. passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account; and

v. records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

9

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

10

### III.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Apple and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Apple that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

11

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by [**PROVIDER**], and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of [**PROVIDER**]. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

a.        all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of [**PROVIDER**], and they were made by [**PROVIDER**] as a regular practice; and

b.        such records were generated by [**PROVIDER'S**] electronic process or system that produces an accurate result, to wit:

1.        the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of [**PROVIDER**] in a manner to ensure that they are true duplicates of the original records; and

3

2.    the process or system is regularly verified by **[PROVIDER]**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                          Signature

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE APPLE ID ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY APPLE, INC. | Case No. 1:19-sc-557 Assigned To: Chief Judge Beryl A. Howell Date Assigned: 03/13/2019 Description: Search and Seizure Warrant |

*RE: APPLE ID WITH DSID* ███████ *AND EMAIL* ████████████████████

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, ████████████, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereafter "Apple") to disclose to the government records and other information, including data and the contents of communications, associated with the above-listed Apple ID that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Infinite Loop, Cupertino, CA. Apple also maintains a corporate office in the District of Columbia at 901 15th Street, N.W., Suite 1001. The information to be disclosed by Apple and searched by the government is described in the following paragraphs and in Attachments A and B. For reasons made obvious below, in addition to employing standard attorney-client privilege filter protocols, the search will proceed pursuant to special procedures set forth in Attachment C ████████

2.      ████████████████████████████████████

███████████████████████████████ I am responsible for investigating national security-related offenses such as acting as an illegal agent of a foreign power and the unauthorized retention or disclosure of classified national defense information, including to members of the news media. I have participated in investigations related to the disclosure of classified national defense information, and I have also assisted others to obtain search warrants in national security investigations. I have also reviewed electronic media obtained in search warrant returns.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on the facts as set forth in this affidavit, there is probable cause to believe that an iCloud account associated with the unique Apple identifiers DSID ████████ and email address ██████████████ (the "iCLOUD ACCOUNT"), described in Attachment A, contains evidence, contraband, instrumentalities, and/or fruits of violations as described in Attachment B.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that the iCLOUD ACCOUNT contains evidence, contraband, instrumentalities, and/or fruits of violations of 18 U.S.C. § 641 (Conversion of U.S. government property) and 18 U.S.C. § 793 (Gathering, transmitting or losing defense information), as described in Attachment B.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), &

2

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated," 18 U.S.C. § 2711(3)(A)(i), and "is in . . . a district in which the provider . . . is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii).

## STATUTORY AUTHORITY AND BACKGROUND

7.    Under 18 U.S.C. § 641, "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States" or "receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted" shall be fined or imprisoned not more than ten years, or both; or if the value the property does not exceed $1,000, he shall be fined or imprisoned not more than one year, or both.

8.    Under 18 U.S.C. § 793(d), "[w]hoever, lawfully having possession of, access to, control over, or being entrusted with any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

9.    Under 18 U.S.C. § 793(e), "[w]hoever having unauthorized possession of, access to, or control over any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or

3

to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

10.    Classified Information.  Under Executive Order 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States government; (2) falls within one or more of the categories set forth in the Executive Order [TOP SECRET, SECRET, and CONFIDENTIAL]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

11.    Where such unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "CONFIDENTIAL" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in serious damage to the national security, the information may be classified as "SECRET" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information may be classified as "TOP SECRET" and must be properly safeguarded. Access to classified information can be further restricted by designating it as "Sensitive Compartmented Information" (SCI). SCI is a type of classified information concerning or derived from sensitive intelligence sources, methods, or analytical processes. SCI must be handled within formal access control systems established by the Director of National Intelligence. One must receive explicit permission to access an SCI control system or compartment. Once it is determined a person should have access to an SCI compartment, that

4

person signs a nondisclosure agreement specific to that compartment.

12.    Classified information of any designation may be shared only with persons determined by an appropriate United States government official to be eligible for access, and who possess a "need to know." Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States government information, that person is required to and must agree to properly protect classified information by never disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person is not eligible to receive classified information, classified information may not be disclosed to that person.

13.

## PROBABLE CAUSE

14.    The facts and circumstances set forth below establish probable cause to believe that from at least on or about April 1, 2017, through on or about July 31, 2017,

5

████████████████████████████████████████████████████████████ used two personal smartphones—the DEVICES—to disclose, or facilitate the disclosure of, classified national defense information that is the property of the U.S. government to persons unauthorized to receive that information. Specifically, there is probable cause to believe that ██████ disclosed classified national defense information made available ███████ by the USIC to members of the news media, in violation of 18 U.S.C. § 793 and 18 U.S.C. § 641. Based on the facts and circumstances set forth herein, there is also probable cause to believe that evidence of these offenses is located in relevant historical back-up information from the DEVICES contained in ███████ Apple iCLOUD ACCOUNT.

## CLASSIFIED ADDENDUM

15.    I represent to the Court that the Classified Addendum to this Affidavit, which is incorporated herein by reference and which identifies the true names of ████████ ██████████████████████████████████████████ ████████████████████ are classified at the TOP SECRET level because the true names of ████████████████████████████████ when read together with the information contained in this Affidavit, would reveal classified information at the TOP SECRET level. Additionally, the true nature of ████████ investigation, along with the facts of this Affidavit, would reveal classified information at the SECRET level. When separated from the Classified Addendum, this Affidavit is not classified. After providing the Court with this Affidavit, including the Classified Addendum, *in camera* for the Court's review for purposes of the Application for a Search Warrant, I request that the FBI be permitted to maintain the Classified Addendum in its files, on behalf of the Court as part of the record. I further request that the Court order that this Affidavit, including the Classified Addendum, remain under seal, except that the agents and other

personnel, including prosecutors, involved in execution of the requested Warrant, who have the necessary security clearance, will review the Classified Addendum in the course of their duties. In addition, the Affidavit, including the Classified Addendum, may be disclosed as necessary to accomplish the Special Search Procedures set forth in Attachment C to this Affidavit.

**Background on** █████████



16.    ████████████████████████████████████████████████

17.    On or about ██████████████████████ was granted a TOP SECRET/SCI security clearance. Based on my training and experience, I know that an individual who is granted a security clearance must in each case sign a form certifying that he or she understands the restrictions on handling and communicating classified information, and the criminal penalties for violating those restrictions, including, among others, 18 U.S.C. § 793.

18.    ████████████████████████████████████████ maintained a TOP SECRET/SCI security clearance and continued to have access to Executive Branch classified national defense information ████████████████████████████████ In approximately late █████████████████████████ could no longer access Executive Branch classified national defense information ██████████████████████████████ ███████ However, ██████████ obligations to safeguard this information continued.

19.    ████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

██████ **Accounts and Devices**

20.     According to AT&T Wireless subscriber information, ██████ has been the subscriber of mobile phone number ████████ since on or about ████████ According to AT&T Wireless toll records: (1) from at least in or about ████████████ 2017, ██████ mobile phone number was associated with an ████████ bearing the unique IMEI number starting with ████████ ("DEVICE 1"), and (2) from at least on or about ████ ████████████████ the mobile phone number was associated with ████████ █ bearing the unique IMEI number starting with ████████ ("DEVICE 2"). Both DEVICES are associated with the same International Mobile Subscriber Identity (IMSI) number. According to Apple Inc. subscriber records, both DEVICES are identified as belonging to the same account, that being an account belonging to ██████ with unique Apple identifiers as DSID ████████ and email address ████████████ Apple records further confirm both DEVICES downloaded and utilized the iCloud application feature. In your affiant's **training and experience**, where, as here, an Apple user backs up his/her data onto the iCloud system, it is typical for data from previous devices to be downloaded onto any new devices, including onto any iCloud backups to these new devices. On or about ████████████████████ the FBI sent preservation letters to Apple for records belonging to ██████ Apple account.

21.     Your affiant is aware that Apple devices that use Apple operating systems, including iPhones, will back up data from the device onto Internet-based iCloud accounts. The data that is backed up from the device is in part automated, and in part determined by the user. The

8

default setting for iPhone users who back up information onto the iCloud are robust and include backups of text messages, iMessages, photographs, videos, and data from third party applications, including encrypted messaging applications such as WhatsApp. In some cases, the iCloud backup will retain information that has been otherwise deleted from the physical iPhone device by the user. Apple subpoena records indicate that ██████ uses a unique iCloud account associated with his Apple ID of ███████████████ and DSID ████████, the iCLOUD ACCOUNT. Apple Inc. records further show that the iCLOUD ACCOUNT is listed as "Full iCloud," which your affiant understands to mean that the historical records and data associated with ████████ activity on his iPhones have been backed up to the iCLOUD ACCOUNT. Starting as early as ████████ ████████ Apple Inc. records show use by ████████ of the iCLOUD ACCOUNT, and regular and routine contacts between ████████ DEVICES and the iCLOUD ACCOUNT continuing through at least ████████

**████████ Reviewed Certain Highly Classified Information**

22.    ████████████████████████████████████████ ████████████████████████████████████ Given the extreme sensitivity of this information (hereinafter the "Classified Materials"), it was only made available to ████████████████████████████████ at a secure facility ████ █ ████ ████████ ████████ █ ████ ████████

23.    All individuals seeking access to the Classified Materials ████████████████ were required to acknowledge that the material was classified and that unauthorized disclosure of the Classified Materials could cause exceptionally grave damage to the U.S. national security, and agree not to disclose the Classified Materials (hereinafter the "read-in").

9

24.    USIC records reveal that ███████ received and acknowledged the read-in on ███████ ████████

25.    USIC records establish that on ██████████████ entered the relevant USIC complex at approximately ██████ and exited at approximately ████████ Also on ██████████ USIC records state that ████████████████████████ visited the ████████ As noted above, ██████████████████████████ at that time.

26.    Finally, USIC records indicate that on ██████████████ may have again visited the Read Room ████████████████████████████

**Portions of the Classified Materials Were Published in the Media**

27.    ████████████████████████████████████████ ████████████████████████████████████████ ████████ According to the USIC, the ████████████ revealed TOP SECRET/SCI information that was contained within the Classified Materials that had been made available to ████████████████████████████

28.    On or about ████████████████████████ ████████████████████████████████████████ According to the USIC, the ████████████ revealed TOP SECRET/SCI information that was

———————————————

[1]    The ████████ record is less definitive because of the utilization of different entrance procedures to the USIC complex when ████████████████████████

[2]    ████████████████████████████████████████████ are identified in the classified addendum to this affidavit ("Classified Addendum"). ████████████████ ████████████████████████

contained within the Classified Materials that had been made available to █████████
████████████████████

29.    On or about ████████████████████████████

██████████████████████████████████████████████

According to the USIC, the ████████████ included TOP SECRET/SCI information that was

contained within the Classified Materials that had been made available to ████████████

██████████████████████

██████ s Contacts with ██████████████████

30.    According to AT&T toll records, ████████ s mobile phone number was in contact

with multiple telephone numbers in 2017 that the FBI has determined are used, and/or controlled

by, members of the news media, including ████████████████████████████████

As further described below, the contacts began in ██████ , prior to ██████ viewing the

Classified Materials. Then, between ████████████ when ██████ was first afforded access to

the Classified Materials, and when ████████████████████████████

mobile phone was in regular contact with phones associated with ████████████████

    a.    On or about ████████████ (one week before the Classified Materials were made

        available to ██████ DEVICE 1 had ████ phone contacts with a phone number

        associated with ████████████ The ██████ calls were from DEVICE 1 to

        ████████████ phone and lasted for less than ██ seconds each. In the ██

11

contact, ███████ phone called DEVICE 1, and the call lasted approximately ██████████

b. On or about ████████—█ days following ██████ visit to the USIC that lasted more than ██████—DEVICE 1 called a phone number associated with ████████ This call lasted approximately ████████████ The FBI is not aware of any evidence that ██████ communicated with ████████ telephonically (using a number known by the FBI to be associated with ████████ between ██████ █ ████████

c. One day later, on or about ██████████████ phone called DEVICE 1. The call lasted for approximately ████████████

d. Between ████████████████ phone called DEVICE 1 ██ times. Toll records indicate that none of these calls resulted in a connection, and that the call from ████████ phone was routed to ████████ voicemail on ████ of the ██ occasions.

e. On or about ████████—as ██████████████████ ████████ and one week prior to ████████████████ ████████ phone called ██████ mobile phone number (now associated with DEVICE 2). This call was routed to ████████ voicemail. ██████ minutes

---

[3]     The FBI is unaware of any information that ██████ had previous telephonic communication with ████████ based on numbers associated with ████████ known to the FBI and the records obtained for the time period beginning January 1, 2015.

later, DEVICE 2 called ███████████ phone. This call lasted approximately ██ ████████████████████

f.  On ███████████████████████████ phone called DEVICE 2. In each of these cases, the phone call was routed to ████████ voicemail.

g.  As noted above, the ██████████████████████████████████

h.  Between ████████████████████████████ phone called DEVICE 2 ████ times. Toll records indicate that none of these calls resulted in a connection, and ████ of these ████ calls were routed to voicemail.

i.  As noted above, the ███████████████████████████████

j.  On or about ███████████████████ phone called DEVICE 2, and the call was routed to ████████ voicemail. Later that same day, DEVICE 2 called ███████████ phone ████ Each call lasted for less than ████████

k.  On or about ███████████████████ phone called DEVICE 2. This call lasted for approximately ████████████████

l.  On or about ████████ after contact with ███████████ phone, DEVICE 2 had ████ telephonic contacts with a phone number associated with ████████████

    i.  ████████████ phone called DEVICE 2. This call was routed to ████████ voicemail.

    ii.  Approximately ████ minutes later, DEVICE 2 called ████████████ phone. This call lasted approximately ████████████

    iii.  Approximately ██ minutes after that call ended, ███████████ phone called DEVICE 2. This call lasted approximately ██████████████ ████████

m. On or about ███████████████████ phone called DEVICE 2 ███ The ███ call lasted approximately ██████████████████ and the ████ contact occurred █████ later, and lasted approximately ████████████████

n. On ████████████████████ phone called DEVICE 2.

o. On or about ██████████—the day prior to ███████████████████ ██████—DEVICE 2 had ████ contacts with ██████████ phone:

    i. ██████████ phone called DEVICE 2, and the call was routed to ██████ voicemail.

    ii. Approximately ████ minutes later, DEVICE 2 called ████████ phone. This call lasted for approximately ██████████████

    iii. ████████████ phone later called DEVICE 2. The call was routed to ██████ voicemail.

p. As noted above, ███████████████████████████████

q. On ██████████ approximately ████ days after ███████████████ ████████ DEVICE 2 called ██████████ phone. This call lasted approximately ████████████████

31.    In addition to the contacts reported above, ████████ phone and █████████ phone had telephonic contact in ███████████████████████████████ there are no known telephonic contacts between ████████████████ known telephone numbers. ████████ phone and ████████████ phone had some telephonic contact in ██████ ████ but had no known telephonic contact thereafter. ████████ phone and █████████████ phone had additional telephonic contact in ██████████████ but had no known telephonic contact thereafter.

32.    Based on your affiant's training and experience, the call pattern activity between ██████ and ████████████ indicates that ██████ is likely a source for the Classified Materials disclosed in ████████████████████████████████ contacts with ██████████████ commenced immediately prior to his gaining access to the Classified Materials disclosed in ██████████ Then, ████████ contacts with these reporters significantly diminished or ceased after ████████████████████

33.    Further based on your affiant's training and experience, ████████ contacts with ██████████████ suggest that ██████ may also have communicated with ██████████ using other means, such as by email or encrypted messaging applications such as WhatsApp. In particular, I am aware that ████████████████████████████



Based on your affiant's training and experience, the telephonic evidence further suggests that ████████ and ████████████ may be using methods to avoid detection by law enforcement, such as by using telephone calls or voicemails as a method to signal to one another to engage in communication using encrypted applications or methods. ██████████████████████████████████████████████ I believe that there is probable cause to believe that evidence of these communications will be found in the iCLOUD ACCOUNT.

**Source Information Concerning ████████**

34.    ██████████████████████ of unknown reliability, who knew ████████ during the relevant timeframe, came forward to the FBI during the course of this

15

investigation (hereinafter the "Witness") to report that the he/she suspected ███████ was responsible for disclosures of classified national defense information ████████████████ ███████ As set forth below, the Witness consistently attributed a series of statements to ███████ indicating that ███████ was attempting to obtain materials from the USIC related to ███████ ███████ (as described in the Classified Addendum) for the purpose of making them public through the media. However, as further described below, despite several interviews, the Witness was unable to provide specific information that could corroborate his/her suspicions.

35.



36.    The Witness has been interviewed at least three times as part of this investigation. On ███████ ███████, and ███████, FBI special agents interviewed the Witness. On the third occasion, ███████, the interview was conducted under oath, led by Assistant U.S. Attorneys from the District of Columbia, and transcribed by a court reporter.

37.    Throughout the three interviews, the Witness offered numerous conclusory statements and, when pressed, was unable to provide specific details and/or admitted that he/she was basing his/her answers on general impressions. While the Witness consistently stated that he/she believed ████████████████████████████ in ███████ upon further questioning, ████████████████████ observe any communications between ████████████████████████████

16



38.    The Witness claimed during all three interviews that ███████████████████ use secure applications or covert means to communicate with ████████████████████ ███████. However, the Witness was unable to point with any degree of specificity to the basis for that belief.

39.    Notably, however, the Witness consistently and specifically recalled that on or about ████████████████████████████████████████████ where the Witness was present. The Witness claimed to have taken contemporaneous notes ██████ ███████ and drafted a memorandum for the file the following day. The Witness produced a document to the FBI, labeled "MEMORANDUM FOR THE RECORD." The document read, in relevant part:

(emphasis and quotations in original). The Witness's statements about this meeting were consistent across all three interviews.

40.    In the transcribed interview, the Witness indicated that he/she believed that ███████ had spoken with ████████████████ right before the ███████████████ and claimed that ███████ came into ██████████ "wired up." Consistent with the contemporaneous memorandum, the Witness indicated that at █████████████ requested ████████████ to

17

push information to the media related to ███████████ in hopes that the media would use that information to push for an investigation ██████████████████ The Witness further claimed that ██████ provided specific instructions ██████████ how ████████████ this mission and indicated that ██████ should push compartmented, classified information to the media. However, later in the interview, the Witness admitted that ████████ did not actually use the word "classified." Nonetheless, the Witness claimed that given the context, including the type of information that ██████ was seeking and the means by which he encouraged seeking it, that "it was understood by everybody" that ██████ was referring to classified information, and that the plan was to disclose that information to the press. At that meeting, the Witness said that although he/she could not "believe" that was happening, the reactions of others ████████ were akin to "a cheerleading party."





42.    The Witness claimed that he/she thought even after ███████████ with whom ██████ was close may have continued to provide ██████ with ████████████ which ██████ may have then disclosed to the media. When asked for specific information to corroborate this allegation, the Witness said he/she knew that ████████ continued to speak with ████████ after █████████████████ but was unable to provide further corroborating information.

43.    ████████████████████████████████████████████ ████████████████████████████████████████ Because, according to the Witness, ████████ had encouraged ████████████ to provide information to the national news media, and because ████████ remained in contact with at least one ████████████ after ██████████████ I believe it is likely that ████████ communicated with ████████████ ████████████████████████████████████████ Because ████████ was no longer ████████████ I believe that these communications likely occurred using DEVICE 2. I therefore assert that there is probable cause to believe that evidence of these communications will be found in the data backed up to ████████ iCLOUD ACCOUNT. Further, because your affiant is aware that Apple users regularly have data from old phones uploaded onto their new devices, your affiant believes that new Apple devices obtained or used by ████████ since ████████ may contain such historic evidence. Therefore, your affiant believes that there is probable cause to search all backup records on the iCloud for evidence of the crimes listed in Attachment B.

44.    Further, if ████████████████████ had been involved in directing multiple individuals, ████████████████ to collect classified national defense information from the

19

USIC and to disclose it to the media, I believe that ▮▮▮▮ would have had to communicate regularly with these persons over multiple weeks and/or months. In my training and experience, I understand ▮▮▮▮ would have likely used personal electronic devices and encrypted applications to conduct such communications. The requested iCLOUD ACCOUNT records could further identify chat groups, sharing platforms, or collective email or text communications that relate to individual and collective communications with reporters, including successful efforts to have these reporters publish classified national defense information that these persons had shared with the reporters.

45. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even if deleted, in my training and experience, persons who use such applications could take photographs (usually screen shots) using their mobile device to preserve records of such communications. Your affiant is, for example, aware of an instance where a subject had set up an auto-delete feature on an encrypted phone application that was not capable of being recovered from the phone using forensic tools, but were nonetheless recovered because the user had taken several screen shots of the communications, which were saved as regular images on the device. Your affiant is aware that, unlike the encrypted communications themselves, deleted photographs and images are routinely recovered on back-up internet cloud records, or from the actual devices using forensic tools.

20

**INFORMATION REGARDING APPLE ID AND iCLOUD**[4]

46.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

47.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services, and can also be used to store iOS device backups and data associated with third-party apps.

---

[4]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.

22

Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

48.    Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

49.    An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

50.    Once a subscriber has registered an account, Apple can provide multiple electronic services, including calendar and file sharing, iMessage (instant messages); FaceTime (video calls); iCloud, a file hosting, storage, and sharing service, which allows users to store, access, share, and synchronize data across various digital devices, for example iCloud Photo Library and My Photo Stream for images and videos, iCloud Drive for documents, including presentations and spreadsheets, iCloud Tabs for synchronizing webpages, iWorks Apps (a suite of productivity apps), and iCloud Keychain (to store various usernames and passwords, credit card information,

23

and Wi-Fi network information); Game Center (Apple's social gaming network, which allows users of Apple devices to play and share games with each other); Find My iPhone (remote location tracking and access to devices); Location Services (which allows apps and websites to access and use information about a user's approximate location); and App Store and iTunes Store (which allow users to purchase and download digital content, *e.g.*, applications).

51.    Depending on user settings, user-generated content derived from many of these services is normally stored on Apple's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on Apple servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Apple's servers for a certain period of time. Furthermore, an Apple subscriber can store: contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Apple servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created an Apple account may be found within such computer files and other information created or stored by the subscriber.

52.    Based on my training and experience, I know that providers such as Apple also collect and maintain information about their subscribers, including information about their use of services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as Apple also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP

24

address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Apple typically collect and maintain location data related to subscriber's use of services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

53.    Based on my training and experience, I know that providers such as Apple also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Apple in order to track what devices are using Apple accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Apple accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Apple account.

54.    Apple also allows its subscribers to access its various services through an application that can be installed on and accessed via multiple cellular telephones and other mobile devices. This application is associated with the subscriber's Apple account. In my training and

25

experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the provider associated with the application (such as Apple) to locate the device on which the application is installed. After the applicable push notification service (*e.g.*, Apple Push Notifications (APN) or Google Cloud Messaging) sends a Push Token to the device, the Token is then sent to the application, which in turn sends the Push Token to the application's server/provider. Thereafter, whenever the provider needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (*i.e.*, the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s). Accordingly, the computers of Apple are likely to contain useful information that may help to identify the specific device(s) used by a particular subscriber to access the subscriber's Apple account via the mobile application.

55.     Based on my training and experience, I know that providers such as Apple use cookies and similar technologies to track users visiting Apple's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Apple. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as Apple may constitute evidence of the criminal activity under investigation. By linking various

26

accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Apple's account and determine the scope of criminal activity.

56.     Based on my training and experience, I know that Apple maintains records that can link different Apple accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Apple accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Apple account.

57.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

58.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains

27

records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

59.    Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

60.    Apple provides users with at least five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud

28

can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

61.    In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

62.    Your affiant is aware that the iCloud backup will include data on phone calls and text messages, as well as the content of historic iMessages and other communications. As such, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

29

63.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

64.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

65.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services or the download of encrypted applications or software used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

66.    Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

67.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, in accordance with the special procedures set forth in Attachment C.

## CONCLUSION

68.    Based on the forgoing, I request that the Court issue the proposed search warrant.

Respectfully submitted,



Subscribed and sworn to before me on _____ MAR 1 3 2019 _____, 2019

_____
UNITED STATES DISTRICT JUDGE

32

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with DSID ████████ and email address ████████████████ (the "iCLOUD ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., 1 Infinite Loop, Cupertino, CA 95014.

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be disclosed by Apple

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a.    For the time period **April 1, 2017 until August 1, 2018** the contents of all communications and related transactional records for all Apple services used by an Account subscriber/user (such as e-mail services, contact lists, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services including, **iCLOUD records and updates,** including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies). This includes iMessage (instant messages); FaceTime (video calls); iCloud, a file hosting, storage, and sharing service, which allows users to store, access, share, and synchronize data across various digital devices, for example iCloud Photo Library and My Photo Stream for images and videos, iCloud

Drive for documents, including presentations and spreadsheets, iCloud Tabs for synchronizing webpages, iWorks Apps (a suite of productivity apps), and iCloud Keychain (to store various usernames and passwords, credit card information, and Wi-Fi network information); Game Center (Apple's social gaming network, which allows users of Apple devices to play and share games with each other); Find My iPhone (remote location tracking and access to devices); Location Services (which allows apps and websites to access and use information about a user's approximate location); shared drives and document retention (including Time Capsule services), and App Store and iTunes Store (which allow users to purchase and download digital content, *e.g.*, applications) records, including for all devices utilizing the iCloud service;

b.      For the time period **April 1, 2017 until August 1, 2018,** the contents of all other data and related transactional records for all Apple services used by an Account user (such as e-mail services, contact lists, address books, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services, including iCloud and **all services referenced in paragraph (a) above,** including any information generated, modified, or stored by user(s) or Apple in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

c.      For the time period **April 1, 2017 until August 1, 2018:** All records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

d.      For the time period **April 1, 2017 until August 1, 2018:** All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history

2

of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

     e.     All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

     f.     All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI"), mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying

any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN");

g.    Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any Apple account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number), registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.    For the time period **April 1, 2017 until August 1, 2018**:    All records of communications between Apple and any person regarding the Account, including contacts with support services and records of actions taken;

i.    Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel); and

j.    The contents of all emails, notes, data, and electronic messages associated with the account, including stored or preserved copies of data, documents, emails and messages sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

4

k.      The contents of all instant messages associated with the account **April 1, 2017 until August 1, 2018**, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

l.      The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

m.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

n.      All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

o.      All records pertaining to the types of service used, including application purchases, downloads, updates and backup records;

p.      All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken;

q.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).;

r.      All applications downloaded, used, or updated using Apple services, including iTunes and iCloud, including dates of acquisition, all updates, and any data associated with such applications which are in control of Apple;

Within **14 DAYS** of the issuance of this warrant, Apple shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



6

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C §§ 641, 793(d), and (e) from April 1, 2017 until August 1, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Evidence that relates to the User's possession, conversion, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining of information owned by the U.S. government on his personal devices;

b.    Evidence that relates to the User's communication with reporters about improperly possessing, converting, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining U.S. government information;

c.    Evidence that relates to the User's knowledge that U.S. government information was being improperly possessed, converted, sold, conveyed, disposed, communicated, delivered, transmitted, received, concealed or obtained, including any communications with persons about coordinating, planning, or discussing such actions;;

d.    Evidence that the User was using encrypted applications, disappearing communications, or communicating with reporters using encryption keys or technologies;

e.    The identity of the person(s) who created or used the Apple ID, including records that help reveal the whereabouts of such person(s);

7

f.    Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

g.    Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

h.    Evidence indicating the subscriber's state of mind as it relates to the crime under investigation;

i.    Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

j.    Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

k.    All evidence related to communications with reporters, efforts to obtain classified information, access to classified information, communications with U.S. intelligence agencies, and any instruction, discussion, or knowledge of other persons passing U.S. government information to persons without legal right to access or review.

l.    Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

m. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

n. Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

o. Evidence that persons have obstructed justice, deleted information, or provided false information to the U.S. government (to facilitate access to government information);

p. Address books, buddy lists and complete contact information of known associates.

q. The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property, information, or classified information, including records that help reveal their whereabouts;

r. items, information, and data containing, constituting, or referring to U.S. government information or classified information;

s. evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

t. identification of any electronic devices being associated with the account;

u. passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account; and

v. records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

### III.   Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Apple and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Apple that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

**ATTACHMENT C**

**Special Search Procedures**

1.      Your affiant has been informed by the Prosecutors overseeing the investigation in this matter that they have decided to adopt special procedures ████████████████████

████████████████████████████████████████████████████████████

2.      These special search procedures will be employed with respect to the Apple Account ████████████████████████████████████████████████ ████████████████████████ These special search procedures are as follows:

a.      Before conducting any review of the contents of the warrant returns, the government will develop a search term protocol designed to identify evidence, contraband, fruits, and instrumentalities of the subject offenses, to include the content of relevant communications between ██████ and members of the news media, ████████████████████████████████████

b.      After conducting the forensic search utilizing the search term protocol, the agents or employees conducting the review will segregate all remaining files

---

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

("Segregated Files). In doing so, the agents and employees will not review the contents of the Segregated Files.

c.      In the event the government determines that it should undertake a broader search of the Segregated Files, the Prosecutors will contact █████████ ████████████████████████████ to seek ██████████████ and consent to the search of Segregated Files pursuant to the instant warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by [**PROVIDER**], and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of [**PROVIDER**]. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of [**PROVIDER**], and they were made by [**PROVIDER**] as a regular practice; and

b.      such records were generated by [**PROVIDER'S**] electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of [**PROVIDER**] in a manner to ensure that they are true duplicates of the original records; and

3

2.    the process or system is regularly verified by **[PROVIDER]**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____

Date                                                  Signature