# ATTACHMENT

# A

*Redacted Docket Materials*

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH ONE ACCOUNT<br>STORED AT PREMISES CONTROLLED BY GOOGLE LLC<br>PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF<br>VIOLATION OF 18 U.S.C. 641 | )<br>)<br>)<br>)<br>)<br>)<br>) | Case: 19-sw-304<br>Assigned To: Judge Ketanji Brown Jackson<br>Assign. Date: 8/21/2019<br>Description: Search Warrant |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641;<br>18 U.S.C. § 793 | Conversion of U.S. government property and Gathering, transmitting or losing<br>defense information |

The application is based on these facts:
See attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 08/21/2019 _____

_____
*Judge's signature*

City and state: Washington, D.C.

Ketanji Brown Jackson, U.S. District Judge
*Printed name and title*

## ATTACHMENT A
### Property to Be Searched

This warrant applies to information which is associated with the Google account(s) identified by Google account number █████████ and email address ███████████████ which is stored at premises owned, maintained, controlled, or operated by Google LLC, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California.

## ATTACHMENT B

### Particular Things to be Seized and Procedures
### to Facilitate Execution of the Warrant

I.    **Information to be disclosed by Google LLC ("PROVIDER") to facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, including any records that have been deleted but are still available to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following information to the government corresponding to each account or identifier ("Account") listed in Attachment A:

a.    For the time period June 2, 2017 until September 30, 2017: The contents of all communications and related transactional records for all PROVIDER services used by an Account subscriber/user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services (such as Google Drive (including any records or data stored therein using encrypted applications), Google Voice and Google Hangout backups and data), including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);[7]

---

[7] Here, PROVIDER's other services include electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Drive (cloud storage), Google Maps

b.      For the time period **June 2, 2017 to September 30, 2017** The contents of all other data and related transactional records for all PROVIDER services used by an Account user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services (including Google Drive and all services reference in paragraph (a) above), including any information generated, modified, or stored by user(s) or PROVIDER in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information):

c.      For the time period **June 2, 2017 to September 30, 2017,** All PROVIDER records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies):

d.      For the time period **June 2, 2017 to September 30, 2017,** All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.      All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of

---

(maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.       All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN"), Google Cloud Messaging ("GCM"), Microsoft Push Notification Service ("MPNS"), Windows Push Notification Service ("WNS"), Amazon Device Messaging ("ADM"), Firebase Cloud Messaging ("FCM"), and Baidu Cloud Push);

g.       Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any PROVIDER account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number),

3

registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.      For the period of **June 2, 2017 to September 30, 2017** , all information held by PROVIDER related to the location and location history of the user(s) of the Account, including geographic locations associated with the Account (including those collected for non-PROVIDER based applications), IP addresses, Global Positioning System ("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell towers;

i.      For the time period **June 2, 2017 to September 30, 2017,** all records of communications between PROVIDER and any person regarding the Account, including contacts with support services and records of actions taken;

j.      Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel);

k.      The contents of all instant messages associated with the account from between **June 2, 2017 until September 30, 2017,** including stored or preserved copies of instant messages (including Google Hangout, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

l.      The contents of all files and other records from **June 2, 2017 until September 30, 2017** that are stored on Google Drive between, including all Google and third-party app data, all

files and other records related to Gmail, Photos, Google Docs, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

m.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, Google Hangout logs, Play Store logs (including purchases, downloads, and updates of Google and third-party apps), and logs associated with any Android or Google device purchase, activation, and upgrades;

n.      All records pertaining to the types of service used, including application purchases, downloads, updates and backup records;

o.      All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken;

p.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to the Provider; and

q.      All applications downloaded, used, or updated using Google services, including Play and Drive, including dates of acquisition, all updates, and any data associated with such applications which are in control of the Provider.

Within **14 days** of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C §§ 641, 793(d), and (e) from April 1, 2017 until September 30, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Evidence that relates to the User's possession, conversion, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining of information owned by the U.S. government on his personal devices;

b.    Evidence that relates to the User's communication with reporters about improperly possessing, converting, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining U.S. government information;

c.    Evidence that relates to the User's knowledge that U.S. government information was being improperly possessed, converted, sold, conveyed, disposed, communicated, delivered, transmitted, received, concealed or obtained, including any communications with persons about coordinating, planning, or discussing such actions;;

d.    Evidence that the User was using encrypted applications, disappearing communications, or communicating with reporters using encryption keys or technologies;

e.    The identity of the person(s) who created or used the Google Account, including records that help reveal the whereabouts of such person(s);

f.    Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

6

g.    Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

h.    Evidence indicating the subscriber's state of mind as it relates to the crime under investigation;

i.    Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

j.    Information that constitutes evidence indicating the Account user's state of mind, e.g., intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

k.    All evidence related to communications with reporters, efforts to obtain classified information, access to classified information, communications with U.S. intelligence agencies, and any instruction, discussion, or knowledge of other persons passing U.S. government information to persons without legal right to access or review.

l.    Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

m.    Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

n.    Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

o.  Evidence that persons have obstructed justice, deleted information, or provided false information to the U.S. government (to facilitate access to government information);

p.  Address books, buddy lists and complete contact information of known associates.

q.  The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property, information, or classified information, including records that help reveal their whereabouts;

r.  items, information, and data containing, constituting, or referring to U.S. government information or classified information;

s.  evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

t.  identification of any electronic devices being associated with the account;

u.  passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account; and

v.  records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**III.    Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the Google and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Google that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

9

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____

[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.      such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____       _____
Date                              Signature

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH ONE ACCOUNT<br>STORED AT PREMISES CONTROLLED BY GOOGLE LLC<br>PURSUANT TO 18 U.S.C. 2703 FOR INVESTIGATION OF<br>VIOLATION OF 18 U.S.C. 641 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case: 19-sw-304
Assigned To: Judge Ketanji Brown Jackson
Assign. Date: 8/21/2019
Description: Search Warrant

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Columbia *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

**YOU ARE COMMANDED** to execute this warrant on or before     September 4, 2019     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     U.S. District Judge Ketanji Brown Jackson     .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____

Date and time issued:     08/21/2019
_____     _____
*Judge's signature*

City and state:     Washington, D.C.
_____     Ketanji Brown Jackson, U.S. District Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

## Certification

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to information which is associated with the Google account(s) identified by Google account number ████████ and email address ████████████████ which is stored at premises owned, maintained, controlled, or operated by Google LLC, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California.

## ATTACHMENT B

### Particular Things to be Seized and Procedures
### to Facilitate Execution of the Warrant

I.    **Information to be disclosed by Google LLC ("PROVIDER") to facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, including any records that have been deleted but are still available to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following information to the government corresponding to each account or identifier ("Account") listed in Attachment A:

a.    For the time period June 2, 2017 until September 30, 2017: The contents of all communications and related transactional records for all PROVIDER services used by an Account subscriber/user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services (such as Google Drive (including any records or data stored therein using encrypted applications), Google Voice and Google Hangout backups and data), including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);[7]

---

[7] Here, PROVIDER's other services include electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Drive (cloud storage), Google Maps

b.    For the time period **June 2, 2017 to September 30, 2017** The contents of all other data and related transactional records for all PROVIDER services used by an Account user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services (including Google Drive and all services reference in paragraph (a) above), including any information generated, modified, or stored by user(s) or PROVIDER in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

c.    For the time period **June 2, 2017 to September 30, 2017,** All PROVIDER records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

d.    For the time period **June 2, 2017 to September 30, 2017,** All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.    All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of

---

(maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f. All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN"), Google Cloud Messaging ("GCM"), Microsoft Push Notification Service ("MPNS"), Windows Push Notification Service ("WNS"), Amazon Device Messaging ("ADM"), Firebase Cloud Messaging ("FCM"), and Baidu Cloud Push);

g. Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any PROVIDER account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (*e.g.*, credit card number),

3

registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier:

h.    For the period of **June 2, 2017 to September 30, 2017**, all information held by PROVIDER related to the location and location history of the user(s) of the Account, including geographic locations associated with the Account (including those collected for non-PROVIDER based applications), IP addresses, Global Positioning System ("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell towers:

i.    For the time period **June 2, 2017 to September 30, 2017,** all records of communications between PROVIDER and any person regarding the Account, including contacts with support services and records of actions taken;

j.    Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel);

k.    The contents of all instant messages associated with the account from between **June 2, 2017 until September 30, 2017**, including stored or preserved copies of instant messages (including Google Hangout, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

l.    The contents of all files and other records from **June 2, 2017 until September 30, 2017** that are stored on Google Drive between, including all Google and third-party app data, all

4

files and other records related to Gmail, Photos, Google Docs, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

m.      All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, Google Hangout logs, Play Store logs (including purchases, downloads, and updates of Google and third-party apps), and logs associated with any Android or Google device purchase, activation, and upgrades;

n.      All records pertaining to the types of service used, including application purchases, downloads, updates and backup records;

o.      All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken;

p.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to the Provider; and

q.      All applications downloaded, used, or updated using Google services, including Play and Drive, including dates of acquisition, all updates, and any data associated with such applications which are in control of the Provider.

Within **14 days** of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



5

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C §§ 641, 793(d), and (e) from April 1, 2017 until September 30, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Evidence that relates to the User's possession, conversion, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining of information owned by the U.S. government on his personal devices;

b.    Evidence that relates to the User's communication with reporters about improperly possessing, converting, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining U.S. government information;

c.    Evidence that relates to the User's knowledge that U.S. government information was being improperly possessed, converted, sold, conveyed, disposed, communicated, delivered, transmitted, received, concealed or obtained, including any communications with persons about coordinating, planning, or discussing such actions;;

d.    Evidence that the User was using encrypted applications, disappearing communications, or communicating with reporters using encryption keys or technologies;

e.    The identity of the person(s) who created or used the Google Account, including records that help reveal the whereabouts of such person(s);

f.    Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

6

g.     Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

h.     Evidence indicating the subscriber's state of mind as it relates to the crime under investigation;

i.     Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

j.     Information that constitutes evidence indicating the Account user's state of mind, e.g., intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

k.   All evidence related to communications with reporters, efforts to obtain classified information, access to classified information, communications with U.S. intelligence agencies, and any instruction, discussion, or knowledge of other persons passing U.S. government information to persons without legal right to access or review.

l.   Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

m.   Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

n.   Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

7

o.  Evidence that persons have obstructed justice, deleted information, or provided false information to the U.S. government (to facilitate access to government information);

p.  Address books, buddy lists and complete contact information of known associates.

q.  The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property, information, or classified information, including records that help reveal their whereabouts;

r.  items, information, and data containing, constituting, or referring to U.S. government information or classified information;

s.  evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

t.  identification of any electronic devices being associated with the account;

u.  passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account; and

v.  records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

8

### III.    Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Google and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Google that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____. I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____
[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.    such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.    the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____        _____
Date                           Signature

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
ONE ACCOUNT STORED AT
PREMISES CONTROLLED BY
GOOGLE LLC PURSUANT TO 18 U.S.C.
2703 FOR INVESTIGATION OF
VIOLATION OF 18 U.S.C. 641

Case: 19-sw-304
Assigned To: Judge Ketanji Brown Jackson
Assign. Date: 8/21/2019
Description: Search Warrant

**Filed Under Seal**

*Reference: USAO Ref. #* ██████    *Subject Account(s): Google account* ██████
*associated with email* ██████

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, ██████ , being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with one account – that is, Google Account ██████ associated with ██████ – which is stored at premises controlled by Google LLC ("Google" or "PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered at / which accepts service at 1600 Amphitheatre Parkway, Mountain View, California and which maintains offices in the District of Columbia at 25 Massachusetts Avenue, NW, Washington, DC 20001. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review

that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.  ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████.  As a result of my involvement in espionage investigations and investigations involving the unauthorized disclosure of classified information, I am familiar with the tactics, methods, and techniques of particular United States persons who possess, or have possessed, a United States security clearance and who may choose to misuse their access to classified information.███████████████████████████████████

████████████████████  As a federal agent, I am authorized to investigate violations of the laws of the United States, and to execute warrants issued under the authority of the United States.

3.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, as well as from the contents of electronic communications obtained through multiple legal process including a return pursuant to 18 U.S.C. §2703(d) from Google on the ███████████████ account and a search warrant served on the iCloud account with the unique Apple identifiers DSID ███████ and email address ███████████████  This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.　Based on the facts as set forth in this affidavit, there is probable cause to believe that a Google account associated with the unique Google account number ███████ and email address ███████████ (the "GOOGLE ACCOUNT"), described in Attachment A, contains evidence, contraband, instrumentalities, and/or fruits of violations of 18 U.S.C. § 641 (Conversion of U.S. government property) and 18 U.S.C. § 793 (Gathering, transmitting or losing defense information), as described in Attachment B.

## JURISDICTION

5.　This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated," 18 U.S.C. § 2711(3)(A)(i), and "is in . . . a district in which the provider . . . is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711(3)(A)(ii). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, DC. *See* 18 U.S.C. § 3237. In addition, PROVIDER is located in the District of Columbia, at corporate offices located in the District of Columbia. *See* 18 U.S.C. § 2711(3)(A)(ii).

## STATUTORY AUTHORITY AND BACKGROUND

6.　Under 18 U.S.C. § 641, "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States" or "receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted" shall be fined or imprisoned not more than ten years, or both; or if the value the property does not exceed $1,000, he shall be fined or imprisoned not more than one year,

3

or both.

7.      Under 18 U.S.C. § 793(d), "[w]hoever, lawfully having possession of, access to, control over, or being entrusted with any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it on demand to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

8.      Under 18 U.S.C. § 793(e), "[w]hoever having unauthorized possession of, access to, or control over any document . . . or information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation, willfully communicates, delivers, transmits or causes to be communicated, delivered, or transmitted" or attempts to do or causes the same "to any person not entitled to receive it, or willfully retains the same and fails to deliver it to the officer or employee of the United States entitled to receive it" shall be fined or imprisoned not more than ten years, or both.

9.      Classified Information. Under Executive Order 13526, information in any form may be classified if it: (1) is owned by, produced by or for, or is under the control of the United States government; (2) falls within one or more of the categories set forth in the Executive Order [TOP SECRET, SECRET, and CONFIDENTIAL]; and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

10.    Where such unauthorized disclosure could reasonably result in damage to the national security, the information may be classified as "CONFIDENTIAL" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in serious damage to the national security, the information may be classified as "SECRET" and must be properly safeguarded. Where such unauthorized disclosure could reasonably result in exceptionally grave damage to the national security, the information may be classified as "TOP SECRET" and must be properly safeguarded. Access to classified information can be further restricted by designating it as "Sensitive Compartmented Information" (SCI). SCI is a type of classified information concerning or derived from sensitive intelligence sources, methods, or analytical processes. SCI must be handled within formal access control systems established by the Director of National Intelligence. One must receive explicit permission to access an SCI control system or compartment. Once it is determined a person should have access to an SCI compartment, that person signs a nondisclosure agreement specific to that compartment.

11.    Classified information of any designation may be shared only with persons determined by an appropriate United States government official to be eligible for access, and who possess a "need to know." Among other requirements, in order for a person to obtain a security clearance allowing that person access to classified United States government information, that person is required to and must agree to properly protect classified information by never disclosing such information to persons not entitled to receive it, by not unlawfully removing classified information from authorized storage facilities, and by not storing classified information in unauthorized locations. If a person is not eligible to receive classified information, classified information may not be disclosed to that person.

12.    ███████████████████████████████████



## PROBABLE CAUSE

13.    The facts and circumstances set forth below establish probable cause to believe that from at least on or about ▮▮▮▮▮▮, through on or about ▮▮▮▮▮▮, ▮▮▮▮▮▮▮ the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ used the GOOGLE ACCOUNT to disclose, or facilitate the disclosure of, classified national defense information that is the property of the U.S. government to persons unauthorized to receive that information. Specifically, there is probable cause to believe that ▮▮▮▮ disclosed classified national defense information ▮▮▮▮▮▮▮▮▮▮▮ by the USIC to members of the news media, in violation of 18 U.S.C. § 793 and 18 U.S.C. § 641.[1]  Based on the facts and circumstances set forth herein, there is also probable cause to believe that evidence of these offenses is located in ▮▮▮▮ GOOGLE ACCOUNT.

---

## CLASSIFIED ADDENDUM

14.    I represent to the Court that the Classified Addendum to this Affidavit, which is incorporated herein by reference and which identifies the true names of ███████████ ████████████████████████████████████████████████████████████████ containing classified information, are classified at the TOP SECRET level because the true names of ███████████████████████████████████ when read together with the information contained in this Affidavit, would reveal classified information at the TOP SECRET level. Additionally, the true nature of ███████████████████ along with the facts of this Affidavit, would reveal classified information at the SECRET level. When separated from the Classified Addendum, this Affidavit is not classified. After providing the Court with this Affidavit, including the Classified Addendum, *in camera* for the Court's review for purposes of the Application for a Search Warrant, I request that the FBI be permitted to maintain the Classified Addendum in its files, on behalf of the Court as part of the record. I further request that the Court order that this Affidavit, including the Classified Addendum, remain under seal, except that the agents and other personnel, including prosecutors, involved in execution of the requested Warrant, who have the necessary security clearance, will review the Classified Addendum in the course of their duties.

### Background on ████████



16.    On or about ███████████████, ████████ was granted a TOP SECRET/SCI security clearance. Based on my training and experience, I know that an individual who is granted

a security clearance must in each case sign a form certifying that he or she understands the restrictions on handling and communicating classified information, and the criminal penalties for violating those restrictions, including, among others, 18 U.S.C. § 793.

17. ████████████████████████████████████████ maintained a TOP SECRET/SCI security clearance and continued to have access to Executive Branch classified national defense information ████████████████████████████ In approximately ████████████████████████ could no longer access Executive Branch classified national defense information ████████████████████████ ██████ However, ████████ obligations to safeguard this information continued.



████████ **Email Accounts**

19. According to AT&T Wireless subscriber information, ████████ has been the subscriber of mobile phone number ████████ since on or about ████████. ████████ subscriber information lists a "Contact home email" of ████████████████

20. According to Apple Inc. subscriber records, ████████ has maintained an Apple account since on or about April 20, 2005, with the unique Apple identifier DSID ████████ That account is also associated with the email address ████████████████

████████████████████████████████████████████



██████ email forwarding address is not a stand-alone email account. Rather, it is a service that will forward messages to a designated email address, such as a Gmail or Yahoo account. When a message is received by the ████████ address, the system automatically forwards that email to the linked email address. Users cannot send emails from the ████████ forwarding email address; nor does ██████ maintain copies of the emails sent to the user by the forwarding email address.

22.    Your affiant believes that the ████████████ is the email that is linked to ████████████ address. According to Google records, ██████ opened the GOOGLE ACCOUNT on or about ████████ The account lists a recovery address of ████████████████████████████████████████ Google records further shows that ████████████ address forwarded to the ████████████ account between ████████████. Google records also show that ██████ regularly accessed this email address between ████████████, and that he regularly sent emails from the address during that same period of time. For instance, on ████████, ██████ accessed his GOOGLE ACCOUNT on five separate occasions.

23.    On one instance, on or about ████████, ██████ sent a text message to the GOOGLE ACCOUNT from his mobile phone number.

██████ **Reviewed Certain Highly Classified Information**

24.    ████████████████████████████████████████████████ ████████████████████████████████████████████████ Given the extreme

9

sensitivity of this information (hereinafter the "Classified Materials"), it was only made available ███████████████████████████████████████ at a secure facility ████████ ███████████████████████████

26.    All individuals seeking access to the Classified Materials ███████████████ were required to acknowledge that the material was classified and that unauthorized disclosure of the Classified Materials could cause exceptionally grave damage to the U.S. national security, and agree not to disclose the Classified Materials (hereinafter the "read-in").

26.    USIC records reveal that ██████ received and acknowledged the read-in on ████ ████████

27.    USIC records establish that on ███████████████ entered the ████████ ████████ at approximately █████ and exited at approximately ██████ Also on ██████████ ████ records state that ███████████████████████ visited the ██████████ As noted above, ███████████████████████ at that time.

28.    Finally, USIC records indicate that on ████████████████ may have again visited the Read Room ██████████████████████████

**Portions of the Classified Materials Were Published in the Media**

29.    On or about ██████████████████████████████ ██████████████████████████████████████████████ ██████████[3]    According to the USIC, the ████████████ revealed TOP SECRET/SCI

---

[2] The ██████████ record is less definitive because of the utilization of different entrance procedures ████████ complex ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████

information that was contained within the Classified Materials that had been made available to

███████████████████████████████

30.    On or about June 23, 2017, a national news outlet ████████████████

███████████████████████████████████████████████

According to the USIC, the ███████████ revealed TOP SECRET/SCI information that was

contained within the Classified Materials that had been made available to ████████████

████████████████

31.    On or about ███████████ a national news outlet ████████████

███████████████████████████████████████████████

According to the USIC, ███████████████ included TOP SECRET/SCI information that was

contained within the Classified Materials that had been made available to ███████████

███████████

████████ **Contacts with** ████████████████

32.    According to AT&T toll records, ███████ mobile phone number was in contact

with multiple telephone numbers in 2017 that the FBI has determined are used, and/or controlled

by, members of the news media, including ███████████████████████████

As further described below, the contacts began in ███████ prior to ███████ viewing the

Classified Materials. Then, between ███████ when ███████ was first afforded access to

the Classified Materials, and when ████████████████████████████

mobile phone was in regular contact with phones associated with ████████████████ The

AT&T Toll records further indicate that ███████ mobile phone used two different devices during

this period, Device 1 and Device 2 (which was activated in ███████.

11

a.   On or about ███████ (one week before the Classified Materials were made available to ████ Device 1 had ███ phone contacts with a phone number associated with ███████ The first ██ calls were from Device 1 to ███████ phone and lasted for less than ██ seconds each. In the ███ contact, ███████ phone called Device 1, and the call lasted approximately ███████

b.   On or about ███████—two days following ███████ visit to the USIC that lasted more than ██ hours—Device 1 called a phone number associated with ███████ This call lasted approximately ███████ The FBI is not aware of any evidence that ███████ communicated with ███████ telephonically (using a number known by the FBI to be associated with ███████ between ███████

c.   One day later, on or about ███████ phone called Device 1. The call lasted for approximately ███████

d.   Between ███████ phone called Device 1 ██ times. Toll records indicate that none of these calls resulted in a connection, and that the call from ███████ phone was routed to ███████ voicemail on ██ of the ██ occasions.

e.   On or about ███████—one week prior to ███████ ███████ phone called ███████ mobile phone number (now

---

[1] The FBI is unaware of any information that ███████ had previous telephonic communication with ███████ based on numbers associated with ███████ known to the FBI and the records obtained for the time period beginning January 1, 2015.

associated with Device 2). This call was routed to ███████ voicemail. ████ minutes later, Device 2 called ██████████ phone. This call lasted approximately ████████████

f.    On████████████████████ phone called Device 2. In each of these cases, the phone call was routed to ████████ voicemail.

g.    As noted above, ████████████████████████████

h.    Between ████████████████████ phone called Device 2 ████ times. Toll records indicate that none of these calls resulted in a connection, and ████ of these ████ calls were routed to voicemail.

i.    As noted above, ████████████████████████████

j.    On or about ██████████████ phone called Device 2, and the call was routed to ████████ voicemail. Later that same day, Device 2 called ████████████ phone twice. Each call lasted for less than ██ seconds.

k.    On or about ██████████████ phone called Device 2. This call lasted for approximately ██████████

l.    On or about ████████ after contact with ██████████ phone, Device 2 had three ████████ contacts with a phone number associated with ██████████

    i.    ██████████ phone called Device 2. This call was routed to ████████ voicemail.

    ii.    Approximately ████ minutes later, Device 2 called ██████████ phone. This call lasted approximately ████████████

    iii.    Approximately ██ minutes after that call ended, ██████████ phone called Device 2. This call lasted approximately ████████████

13



m.    On or about ▮▮▮▮▮▮ phone called Device 2 ▮▮ The ▮▮ call lasted approximately ▮▮▮▮▮▮ and the ▮▮ contact occurred ▮▮ later, and lasted approximately ▮▮▮▮▮▮

n.    On ▮▮▮▮▮▮ phone called Device 2.

o.    On or about ▮▮▮▮ —the day prior to ▮▮▮▮▮▮ ▮▮ —Device 2 had ▮▮ contacts with ▮▮▮▮ phone:

   i.    ▮▮▮▮ phone called Device 2, and the call was routed to ▮▮▮▮ voicemail.

   ii.   Approximately ▮▮ minutes later, Device 2 called ▮▮▮▮ phone. This call lasted for approximately ▮▮▮▮▮▮

   iii.  ▮▮▮▮ phone later called Device 2. The call was routed to ▮▮▮▮ voicemail.

p.    As noted above, ▮▮▮▮▮▮▮▮

q.    On ▮▮▮▮ approximately ▮▮ days after ▮▮▮▮▮▮ ▮▮▮▮ Device 2 called ▮▮▮▮ s phone. This call lasted approximately ▮▮▮▮▮▮

33.   In addition to the contacts reported above, ▮▮▮▮ phone and ▮▮▮▮ phone had telephonic contact in ▮▮▮▮▮▮ After ▮▮▮▮ there are no known telephonic contacts between ▮▮▮▮ and ▮▮▮▮ s known telephone numbers. ▮▮▮▮ phone and ▮▮▮▮ phone had some telephonic contact in ▮▮▮▮ but had no known telephonic contact thereafter. ▮▮▮▮ phone and ▮▮▮▮ phone had additional telephonic contact in ▮▮▮▮▮▮ but had no known telephonic contact thereafter.

34.    Based on your affiant's training and experience, the call pattern activity between ████████ and ████████████████████ indicates that ████████ is likely a source for the Classified Materials disclosed in the articles written by ████████████████████ contacts with ████████████████ commenced immediately prior to his gaining access to the Classified Materials disclosed ████████████ Then, ████████ contacts with ████████ significantly diminished or ceased after ████████████████

**Apple iCloud Search Warrant Returns**

35.    On ████████, Chief Judge Beryl A. Howell authorized a search ████████████ Apple iCloud Account. The information provided by Apple in the iCloud return was subjected to standard attorney-client privilege filter protocols and special search procedures to insure that your affiant was not exposed to information protected by ████████████████████ ████████ The review of the iCloud return is ongoing.  Select results from that iCloud return have been provided to your affiant for review.

36.    Contained within this iCloud return are multiple audio recordings of voicemails left for ████████ by ████████████ ████ audio recordings are from ████████████ In these voicemails, ████████████ adopts a friendly, chatty tone that makes it appear as if ████████████ ██ has an ongoing relationship with ████████ ████████████ makes comments such as ████████ ████████████████████████████████████████ ████████████████ also solicits ████████ opinion about various matters, stating in one message ████████████████████

37.    The iCloud return also contains ████ audio recordings of voicemails left by ████████████████████ messages also indicate a familiarity with ████████ personal circumstances. In one such message, ████████████ stated that ████████████ knew that ████████

15

█████████ but asked him to call back anyway because █████████████

██████

38.     Based on your affiant's ongoing review, the iCloud return contains audio recordings of voicemails left by at least ███████ Many of those voicemails reference specific questions for ██████ concerning ████████████████████ At least one other email references email communications from ████████ to ████████ which your affiant believes would have been forwarded to the GOOGLE ACCOUNT by ██████████████ email forwarding account. Finally, in at least one voicemail, a reporter refers ████████████ relationship with ████████

### Google Information

39.     Google has also provided information on the GOOGLE ACCOUNT pursuant to Court-issued legal process. Google records indicate that ████████ had at least █ email communications with ██████████ known email address from his GOOGLE ACCOUNT between ████████████████ These records confirm that the GOOGLE Account was used to communicate with ██████████ known email address near in time to the ██████████████ that contained classified information that ████████ had been given access to review.

40.     The Google records also indicate that ████████ activated his GOOGLE ACCOUNT on ████████ and that he has the following current active account services through Google: Android, Gmail, Google Calendar, Google Chrome Sync, Google Docs, Google Drive, Google Hangouts, Google Maps, Google Maps Engine, Google Payments, Google Photos, Google Play, Google Services, Google Voice, Location History, and YouTube. The Google records also

indicate that the GOOGLE ACCOUNT has used the following additional activities through the account: Google Search and Google Translate.

41.     On July 16, 2019, the FBI sent Google a preservation request, asking Google to preserve all records related to the GOOGLE ACCOUNT.

**Source Information Concerning** ▮▮▮▮

42.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of unknown reliability, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

investigation (hereinafter the "Witness") to report that the he/she suspected ▮▮▮▮ was responsible for disclosures of classified national defense information to members of the news media. As set forth below, the Witness consistently attributed a series of statements to ▮▮▮▮ indicating that ▮▮▮▮ was attempting to obtain materials from the USIC ▮▮▮▮▮ ▮▮▮▮ (as described in the Classified Addendum) for the purpose of making them public through ▮▮▮▮ However, as further described below, despite several interviews, the Witness was unable to provide specific information that could corroborate his/her suspicions.

43.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



44.     The Witness has been interviewed at least three times as part of this investigation.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

█████████████████████████

45.  Throughout the three interviews, the Witness offered numerous conclusory statements and, when pressed, was unable to provide specific details and/or admitted that he/she was basing his/her answers on general impressions. ███████████████ he/she believed ████████████ were regularly leaking classified information to the media in ████ upon further questioning, the Witness acknowledged that he/she did not personally observe any communications between ████████████ and members of the media during which classified information was leaked, nor did he/she possess any specific examples of classified information that had allegedly been disclosed to the media.

46.  The Witness claimed during all three interviews that ████████████ would use secure applications or covert means to communicate ████████ who reported classified information. However, the Witness was unable to point with any degree of specificity to the basis for that belief.

47.  Notably, however, the Witness consistently and specifically recalled that on or about ██████████████████████ where the Witness was present. The Witness claimed to have taken contemporaneous notes of ███ ████ and drafted a memorandum for the file the following day. The Witness produced a document to the FBI, labeled "MEMORANDUM FOR THE RECORD." The document read, in relevant part:

████████████████████████

18



(emphasis and quotations in original). The Witness's statements about this meeting were consistent across all three interviews.

48. ████████████████████████████████████████████████████████████ ██████ had spoken with ████████████████████████████████████████████ and claimed that ██████ came into ████████ "wired up." Consistent with the contemporaneous memorandum, the Witness indicated that ████████████████ requested ████████████ to push information to the media related to ████████████ in hopes that the media would use that information to push for an investigation ████████████████ The Witness further claimed that ██████ provided specific instructions ████████████████ should conduct this mission and indicated that ██████ should push compartmented, classified information to the media. However, later in the interview, the Witness admitted that ██████ did not actually use the word "classified." Nonetheless, the Witness claimed that given the context, including the type of information that ██████ was seeking and the means by which he encouraged seeking it, that "it was understood by everybody" that ██████ was referring to classified information, and that the plan was to disclose that information to the press. At that meeting, the Witness said that although he/she could not "believe" that was happening, the reactions of others in the room were akin to "a cheerleading party."

19



50.    The Witness claimed that he/she thought even after ███████████████ with whom ██████ was close may have continued to provide ██████ with ████████████ which ██████ may have then disclosed to the media. When asked for specific information to corroborate this allegation, the Witness said he/she knew that this staffer continued to speak with ██████ after ████████████████████ but was unable to provide further corroborating information.

████████████████████████████████████████████████████████████████████████████████. Because, according to the Witness, ██████ had encouraged ████████ to provide information to the national news media, and because ██████ remained in contact with ████████████ ████████████ I believe it is likely that ██████ communicated with ████████████ ██████ about ████████████████████████████ Because ██████ was ████████████ I believe that these communications likely occurred using his GOOGLE

ACCOUNT, and that there is probable cause to believe that evidence of these communications will be found therein.

## BACKGROUND CONCERNING PROVIDER'S ACCOUNTS

52.    PROVIDER is the provider of the internet-based account(s) identified by Google account number ████████ and email address ████████████

53.    PROVIDER provides its subscribers internet-based accounts that allow them to send, receive, and store e-mails online. PROVIDER accounts are typically identified by a single username, which serves as the subscriber's default e-mail address, but which can also function as a subscriber's username for other PROVIDER services, such as instant messages and remote photo or file storage.

54.    Based on my training and experience, I know that PROVIDER allows subscribers to obtain accounts by registering on PROVIDER's website. During the registration process, PROVIDER asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate e-mail address for backup purposes, a phone number, and in some cases a means of payment. PROVIDER typically does not verify subscriber names. However, PROVIDER does verify the e-mail address or phone number provided.

55.    Once a subscriber has registered an account, PROVIDER provides e-mail services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. PROVIDER subscribers can also use that same username or account in connection with other services provided by PROVIDER.[5]

---

[5] Here, PROVIDER's other services include electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google+ (social networking), Google Groups (group discussions), Google Photos (photo sharing), and YouTube (video sharing); web browsing and

56.    In general, user-generated content (such as e-mail) that is written using, stored on, sent from, or sent to a PROVIDER account can be permanently stored in connection with that account, unless the subscriber deletes the material. For example, if the subscriber does not delete an e-mail, the e-mail can remain on PROVIDER's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to exist on PROVIDER's servers for a certain period of time.

57.    Thus, a subscriber's PROVIDER account can be used not only for e-mail but also for other types of electronic communication, including instant messaging (including through Google Hangouts), photo and video sharing, voice calls, video chats, SMS text messaging; and social networking. Depending on user settings, user-generated content derived from many of these services is normally stored on PROVIDER's servers until deleted by the subscriber. Similar to e-mails, such user-generated content can remain on PROVIDER's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on PROVIDER's servers for a certain period of time. Furthermore, a PROVIDER subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on PROVIDER's servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created a PROVIDER account may be found within such computer files and other information created or stored by the PROVIDER subscriber.

---

search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Keep (storing text), Google Drive (cloud storage), Google Maps (maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

58. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

59.     Based on my training and experience, I know that providers such as PROVIDER also collect and maintain information about their subscribers, including information about their use of PROVIDER services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as PROVIDER also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as PROVIDER typically collect and maintain location data related to subscriber's use of PROVIDER services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

60.     Based on my training and experience, I know that providers such as PROVIDER also collect information relating to the devices used to access a subscriber's account – such as

23

laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by PROVIDER in order to track what devices are using PROVIDER's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other PROVIDER accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the PROVIDER account.

61.     PROVIDER also allows its subscribers to access its various services through an application that can be installed on and accessed via cellular telephones and other mobile devices. This application is associated with the subscriber's PROVIDER account. In my training and experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the provider associated with the application (such as PROVIDER) to locate the device on which the application is installed. After the applicable push notification service (e.g., Apple Push Notifications (APN) or Google Cloud Messaging) sends a Push Token to the device, the Token is then sent to the application, which in

turn sends the Push Token to the application's server/provider. Thereafter, whenever the provider needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (*i.e.*, the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s). Accordingly, the computers of PROVIDER are likely to contain useful information that may help to identify the specific device(s) used by a particular subscriber to access the subscriber's PROVIDER account via the mobile application.

62.    Based on my training and experience, I know that providers such as PROVIDER use cookies and similar technologies to track users visiting PROVIDER's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to PROVIDER. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as PROVIDER may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a PROVIDER account and determine the scope of criminal activity.

63.    Based on my training and experience, I know that PROVIDER maintains records that can link different PROVIDER accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group

25

of persons, used multiple PROVIDER accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular PROVIDER account.

64.    Based on my training and experience, I know that subscribers can communicate directly with PROVIDER about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as PROVIDER typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

65.    In summary, based on my training and experience in this context, I believe that the computers of PROVIDER are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved e-mail for PROVIDER subscribers), as well as PROVIDER-generated information about its subscribers and their use of PROVIDER services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide PROVIDER with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

66.    As explained above, information stored in connection with a PROVIDER account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element

26

of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a PROVIDER account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by PROVIDER can show how and when the account was accessed or used. For example, providers such as PROVIDER typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the PROVIDER account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via e-mail). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the PROVIDER account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).[6]

---

[6] At times, internet services providers such as PROVIDER can and do change the details and functionality of the services they offer. While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of PROVIDER's services in connection with submitting this application

27

67.     Based on my training and experience, I know that evidence of who controlled, used, and/or created a PROVIDER account may be found within the user-generated content created or stored by the PROVIDER subscriber.  This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group.  In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close in time to the offenses under investigation.  This is true for at least two reasons.  First, people that commit crimes involving electronic accounts (e.g., e-mail accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime.  Second, earlier-generated content may be quite valuable, because criminals typically improve their tradecraft over time.  That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced.  Finally, because e-mail accounts and similar PROVIDER accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

## CONCLUSION

68.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested

---

for a search warrant.  Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

28

warrant at any time in the day or night.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Federal Bureau of Investigation

Subscribed and sworn to before me on August 21, 2019

KETANJI BROWN JACKSON
UNITED STATES DISTRICT JUDGE

29

## ATTACHMENT A
### Property to Be Searched

This warrant applies to information which is associated with the Google account(s) identified by Google account number ███████ and email address ████████ which is stored at premises owned, maintained, controlled, or operated by Google LLC, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California.

## ATTACHMENT B

### Particular Things to be Seized and Procedures
### to Facilitate Execution of the Warrant

I.    **Information to be disclosed by Google LLC ("PROVIDER") to facilitate execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, including any records that have been deleted but are still available to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following information to the government corresponding to each account or identifier ("Account") listed in Attachment A:

a.    For the time period June 2, 2017 until September 30, 2017: The contents of all communications and related transactional records for all PROVIDER services used by an Account subscriber/user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services (such as Google Drive (including any records or data stored therein using encrypted applications), Google Voice and Google Hangout backups and data), including but not limited to incoming, outgoing, and draft e-mails, messages, calls, chats, and other electronic communications; attachments to communications (including native files); source and destination addresses and header or routing information for each communication (including originating IP addresses of e-mails); the date, size, and length of each communication; and any user or device identifiers linked to each communication (including cookies);[7]

---

[7] Here, PROVIDER's other services include electronic communication services such as Google Voice (voice calls, voicemail, and SMS text messaging), Hangouts (instant messaging and video chats), Google Photos (photo sharing), and YouTube (video sharing); web browsing and search tools such as Google Search (internet searches), Web History (bookmarks and recorded browsing history), and Google Chrome (web browser); online productivity tools such as Google Calendar, Google Contacts, Google Docs (word processing), Google Drive (cloud storage), Google Maps

b.        For the time period **June 2, 2017 to September 30, 2017** The contents of all other data and related transactional records for all PROVIDER services used by an Account user (such as e-mail services, calendar services, file sharing or storage services, photo sharing or storage services, remote computing services, instant messaging or chat services, voice call services, or remote computing services (including Google Drive and all services reference in paragraph (a) above), including any information generated, modified, or stored by user(s) or PROVIDER in connection with the Account (such as contacts, calendar data, images, videos, notes, documents, bookmarks, profiles, device backups, and any other saved information);

c.        For the time period **June 2, 2017 to September 30, 2017,** All PROVIDER records concerning the online search and browsing history associated with the Account or its users (such as information collected through tracking cookies);

d.        For the time period **June 2, 2017 to September 30, 2017,** All records and other information concerning any document, or other computer file created, stored, revised, or accessed in connection with the Account or by an Account user, including the contents and revision history of each document or other computer file, and all records and other information about each connection made to or from such document or other computer file, including the date, time, length, and method of connection; server log records; data transfer volume; and source and destination IP addresses and port numbers;

e.        All records regarding identification of the Account, including names, addresses, telephone numbers, alternative e-mail addresses provided during registration, means and source of

---

(maps with driving directions and local business search) and other location services, and Language Tools (text translation); online tracking and advertising tools such as Google Analytics (tracking and reporting on website traffic) and Google AdWords (user targeting based on search queries); Pixel Phone (services which support a Google smartphone); and Google Play (which allow users to purchase and download digital content, e.g., applications).

2

payment (including any credit card or bank account number), records of session times and durations (including IP addresses, cookies, device information, and other identifiers linked to those sessions), records of account registration (including the IP address, cookies, device information, and other identifiers linked to account registration), length of service and types of services utilized, account status, methods of connecting, and server log files;

f.      All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s), including unique application numbers and push notification tokens associated with the Account (including Apple Push Notifications ("APN"), Google Cloud Messaging ("GCM"), Microsoft Push Notification Service ("MPNS"), Windows Push Notification Service ("WNS"), Amazon Device Messaging ("ADM"), Firebase Cloud Messaging ("FCM"), and Baidu Cloud Push);

g.      Basic subscriber records and login history (including, as described in 18 U.S.C. § 2703(c)(2), names, addresses, records of session times and durations, length of service and types of service utilized, instrument numbers or other subscriber numbers or identities, and payment information) concerning any PROVIDER account (including both current and historical accounts) ever linked to the Account by a common e-mail address (such as a common recovery e-mail address), or a common telephone number, means of payment (e.g., credit card number),

3

registration or login IP addresses (during one-week period), registration or login cookies or similar technologies, or any other unique device or user identifier;

h.    For the period of **June 2, 2017 to September 30, 2017** , all information held by PROVIDER related to the location and location history of the user(s) of the Account, including geographic locations associated with the Account (including those collected for non-PROVIDER based applications), IP addresses, Global Positioning System ("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell towers;

i.    For the time period **June 2, 2017 to September 30, 2017, a**ll records of communications between PROVIDER and any person regarding the Account, including contacts with support services and records of actions taken;

j.    Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions about the Account or associated user(s) (but not including confidential communications with legal counsel);

k.    The contents of all instant messages associated with the account from between **June 2, 2017 until September 30, 2017**, including stored or preserved copies of instant messages (including Google Hangout, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

l.    The contents of all files and other records from **June 2, 2017 until September 30, 2017** that are stored on Google Drive between, including all Google and third-party app data, all

files and other records related to Gmail, Photos, Google Docs, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

m.  All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, Google Hangout logs, Play Store logs (including purchases, downloads, and updates of Google and third-party apps), and logs associated with any Android or Google device purchase, activation, and upgrades;

n.  All records pertaining to the types of service used, including application purchases, downloads, updates and backup records;

o.  All records pertaining to communications between Google and any person regarding the account, including contacts with support services and records of actions taken;

p.  All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to the Provider; and

q.  All applications downloaded, used, or updated using Google services, including Play and Drive, including dates of acquisition, all updates, and any data associated with such applications which are in control of the Provider.

Within **14 days** of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:



## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence, contraband, fruits, and/or instrumentalities of violations of 18 U.S.C §§ 641, 793(d), and (e) from April 1, 2017 until September 30, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Evidence that relates to the User's possession, conversion, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining of information owned by the U.S. government on his personal devices;

b.    Evidence that relates to the User's communication with reporters about improperly possessing, converting, selling, conveying, disposing, communicating, delivering, transmitting, receiving, concealing, or retaining U.S. government information;

c.    Evidence that relates to the User's knowledge that U.S. government information was being improperly possessed, converted, sold, conveyed, disposed, communicated, delivered, transmitted, received, concealed or obtained, including any communications with persons about coordinating, planning, or discussing such actions;;

d.    Evidence that the User was using encrypted applications, disappearing communications, or communicating with reporters using encryption keys or technologies;

e.    The identity of the person(s) who created or used the Google Account, including records that help reveal the whereabouts of such person(s);

f.    Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

6

g.      Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

h.      Evidence indicating the subscriber's state of mind as it relates to the crime under investigation;

i.      Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

j.      Information that constitutes evidence indicating the Account user's state of mind, e.g., intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation; and

k.      All evidence related to communications with reporters, efforts to obtain classified information, access to classified information, communications with U.S. intelligence agencies, and any instruction, discussion, or knowledge of other persons passing U.S. government information to persons without legal right to access or review.

l.      Evidence that persons were involved in the theft, transport, or misappropriation of property or information owned by the United States;

m.      Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crimes under investigation;

n.      Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

o.  Evidence that persons have obstructed justice, deleted information, or provided false information to the U.S. government (to facilitate access to government information);

p.  Address books, buddy lists and complete contact information of known associates.

q.  The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to the theft, misappropriation, or transfer of U.S. property, information, or classified information, including records that help reveal their whereabouts;

r.  items, information, and data containing, constituting, or referring to U.S. government information or classified information;

s.  evidence of user attribution showing who used, controlled, or owned the account at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

t.  identification of any electronic devices being associated with the account;

u.  passwords, encryption keys, and other devices that may be necessary to access any electronic device associated with the account; and

v.  records of, or information about, the account's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" and "data" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

8

### III.   Government procedures for warrant execution

The United States government will conduct a search of the information produced by the Google and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from Google that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____ , attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ ("PROVIDER"), and my title is _____ . I am a custodian of records for PROVIDER, and I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of PROVIDER. The attached records consist of:

_____
[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]

I further state that:

a.       all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of PROVIDER, and they were made by PROVIDER as a regular practice; and

b.       such records were generated by PROVIDER's electronic process or system that produces an accurate result, to wit:

1.       the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of PROVIDER in a manner to ensure that they are true duplicates of the original records; and

2.       the process or system is regularly verified by PROVIDER, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.


_____        _____
Date                            Signature