# ATTACHMENT A

*Redacted Docket Materials*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
                                   )
IN RE APPLICATION OF THE           )
UNITED STATES OF AMERICA FOR       )     MISC. NO. ____
AN ORDER PURSUANT TO               )
18 U.S.C. § 2703(d)                )     **Filed Under Seal**
_____)

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require GoDaddy Inc. ("GoDaddy"), an Internet service provider located in Scottsdale, Arizona, to disclose certain records and other information pertaining to the email accounts: ██████████████████████ ██████████████████████████████, as described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND

1. GoDaddy is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require GoDaddy to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically,

the Court is a district court of the United States that has jurisdiction over the offense being investigated.  *See* 18 U.S.C. § 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4. On or about March 2, 2015, the U.S. Department of Commerce, Office of Export Enforcement ("OEE"), was informed by a U.S. Government employee acting in an official capacity that ▮▮▮▮▮▮▮▮ were scheduled to be exported from the United States to ▮▮▮▮.  The putative purchaser of the ▮▮▮▮▮▮ was ▮▮▮▮▮▮.  However, the U.S. Government employee further indicated that the ▮▮▮▮▮▮ were likely to be diverted to a prohibited party, namely, ▮▮▮▮▮▮▮▮▮▮ is subject to a Temporary Denial Order ("TDO") by the U.S. Department of Commerce.[1]  The terms of the TDO prohibit any affiliate, representative, employee, or agent of ▮▮▮▮ from obtaining any U.S.-origin items ultimately destined for ▮▮▮▮.  OEE is investigating a possible conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h), and to unlawfully export commodities to destinations outside the United States, in violation of the Export Administration Regulations ("EAR"), 15 CFR § 730, *et. seq.*, the International Emergency Economic Powers

---

[1] A TDO is an administrative order "temporarily denying export privileges when such an order is necessary in the public interest to prevent the occurrence of an imminent violation." 15 C.F.R. § 764.2(k).

2

Act ("IEEPA"), 50 U.S.C. §§ 1701-1706, and 18 U.S.C § 554(a), in connection with this transaction by ▮▮▮▮▮▮▮

5. OEE, in exercising authorities granted to it under the Export Administration Regulations ("EAR"), detained ▮▮▮▮▮ involved in the transaction. These ▮▮▮▮▮ identified by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with U.S.-origin ▮▮▮▮▮▮▮▮▮▮▮ had signed a letter of intent in October 2014 to purchase the ▮▮▮▮ from a U.S.-based seller. The same letter of intent also committed ▮▮▮▮▮ to purchase a ▮▮▮▮▮▮ from the U.S.-based seller in a sale that was never finalized. This letter of intent, as well as ▮ ensuing purchase agreements for ▮▮▮▮▮▮ were signed by ▮▮▮▮▮▮▮▮ Based on information obtained in this investigation, ▮▮▮ is believed to be a ▮▮▮▮▮▮▮▮ and has addresses in ▮▮▮▮▮▮▮▮▮ ▮▮.

6. On ▮▮▮▮▮ the United States obtained a warrant to seize ▮▮▮▮ in funds representing ▮▮▮▮▮ payment for ▮▮▮▮▮▮ in this transaction as well as ▮▮▮▮▮ deposit for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7. On or about ▮▮▮▮▮▮▮▮ announced that ▮▮▮▮▮ acquired ▮▮▮▮▮▮ for that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ According to a ▮▮▮▮▮▮▮▮▮▮▮▮▮, these ▮▮▮▮▮▮ were transferred from ▮

3

███████████████████ On May 21, 2015, the Department of Commerce added ██ ██████████ to the TDO against ████████

8. The domain ██████████ is hosted by GoDaddy Inc., a company located at 11445 North Hayden Road, Suite 209, Scottsdale, Arizona 85260. The domain registrant is listed as ██████████ with an address in ██████████

9. While ██████████ is incorporated in ████████████████████ ██████████████████ according to information received in the course of this investigation.

10. On or about December 17, 2014, ████████, acting as a representative of ████ ██████ signed a sale and purchase agreement for ██████████ being sold by an offshore subsidiary of a U.S.-based company in a transaction separate from, but similar to, the transaction under investigation here. That agreement contained provisions restricting the sale or transfer to an unauthorized party, particularly anyone subject to U.S., European Union, or United Nations sanctions. ████████ telephone and email contact information was included in the section on providing notice in service of the agreement, and he included his email address: ████████████████████████████ sold in this transaction was later identified by a reliable ██████████ trade publication as one that was transferred from ██████████ in ██████████████ in May 2015.

11. On or about February 19, 2015, ████████, acting as a representative of ████████ signed ██ separate, but identical, sale and purchase agreements for ██████████ ██ at issue in this investigation, ██████████████████████ of these agreements contained provisions restricting the sale or transfer to an unauthorized party, particularly anyone subject to U.S., European Union, or United Nations sanctions. In ██ agreements, ████████

4

telephone and email contact information was included in the section on providing notice in service of the agreement, and he included his email address: ▇▇▇▇▇▇ The consistent use of ▇▇▇ email address ▇▇▇▇▇▇ for correspondence relating to ▇▇▇▇▇▇ suggests that this email account is likely to hold evidence relevant to the investigation into ▇▇▇ procurement efforts for U.S.-origin ▇▇▇.

12.     On or about March 1, 2015, prior to the detention of the ▇▇▇ involved in the transaction under investigation here, an email "From: ▇▇▇ using the email address ▇▇▇▇▇▇, sent a notice to the U.S. Company seller regarding the purchase of ▇▇▇. Based on information obtained in this investigation, it is believed that ▇▇▇ refers to ▇▇▇, who is a ▇▇▇▇▇▇ ▇▇▇▇▇▇ was previously implicated in the United Nations ▇▇▇ ▇▇▇▇▇▇ involving ▇▇▇ and its ▇▇▇▇▇▇ ▇▇▇▇▇▇ is believed to currently reside in ▇▇▇.

13.     On or about March 4, 2015, following the detention of the ▇▇▇ by OEE, a third party who had previously been involved in the transaction under investigation in this case wrote an email to the U.S. seller requesting contact information for the OEE Special Agent investigating the case. The third party included email addresses ▇▇▇▇▇▇ as courtesy copy recipients of this email, indicating that both of these email addresses have been involved in communications regarding the transaction at issue in this case and are likely to contain evidence relevant to ▇▇ ▇▇▇ ongoing procurement efforts and the transactions at issue here.



14. Between March 16, 2015 and March 30, 2015, ▮▮▮▮▮▮▮▮▮▮ emailed the case agent from OEE to provide information about the transaction and documentation requested by OEE. This further indicates that the email address ▮▮▮▮▮▮▮▮▮▮ has been involved in communications regarding the transaction at issue in this case. It is believed that the email address ▮▮▮▮▮▮▮▮▮▮ belongs to ▮▮▮▮▮▮▮▮▮▮ who has represented himself to be ▮▮▮▮▮▮▮▮▮▮.

15. Because many companies and individuals in ▮▮▮▮▮▮▮▮▮▮ are located in far-flung locations across the globe, and are frequently far from manufacturers, distributors, suppliers, and vendors, they routinely rely on electronic mail to conduct business, negotiate transactions, and confirm payments and financial information. That is particularly likely to be the case here, where the email addresses represent individuals believed to be located in ▮▮▮▮▮▮▮▮▮▮ and who are acting on behalf of an ▮▮▮▮▮▮▮▮▮▮ and involved in efforts to procure ▮▮▮ from the United States. Email, moreover, is likely to be the preferred medium of communication for the transmission of contracts, assignments, agreements, invoices, purchase orders, bills of lading, shipping instructions, technical requirements, inventory lists to purchase, wire transfer and payment confirmation, financial records, and documents pertaining to the business. Such documents are likely to be relevant to the investigation into ▮▮▮▮▮▮ procurement efforts for U.S.- origin ▮▮▮▮.

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

REQUEST FOR ORDER

16.     The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to locate evidence regarding ▮▮▮▮▮ involvement in the transaction to purchase the U.S.-origin ▮▮▮▮▮ and subsequent attempted transfer of ▮▮▮▮▮ ▮▮▮▮▮, in addition to their successful transfer of ▮▮▮▮▮ Accordingly, the United States requests that GoDaddy be directed to produce all items described in Part II of Attachment A to the proposed Order.

17.     The United States further requests that the Order require Go Daddy not to notify any person, including the subscribers or customers of the account listed in Part I of Attachment A, of the existence of the Order for a period of 180-days. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is not public, and its disclosure may alert the target to the ongoing continuing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under

7

investigation could destroy that evidence, including information saved to their personal computers.

18. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_/s/Christopher B. Brown_
Christopher B. Brown, D.C. Bar No. 1008763
Assistant U.S. Attorney
United States Attorney's Office
555 Fourth Street, N.W., Room 4816
Washington, D.C. 20530
(202) 252-7153 voice
Christopher.Brown6@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF THE ) | |
| UNITED STATES OF AMERICA FOR ) | MISC. NO. ____ |
| AN ORDER PURSUANT TO ) | |
| 18 U.S.C. § 2703(d) ) | |
| ) | **Filed Under Seal** |

## ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring GoDaddy, Inc., ("GoDaddy"), an electronic communications services provider and/or a remote computing service located in Scottsdale, Arizona, to disclose the records and other information described in Attachment A to this Order.

The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation.

The Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that GoDaddy shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that GoDaddy shall not disclose the existence of the application of the United States, or the existence of this Order of the Court, to the subscribers of the account listed in Attachment A, or to any other person, for a period of

180 days, except that GoDaddy may disclose this Order to an attorney for GoDaddy for the purpose of receiving legal advice.

     IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

_____
HON. G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

_____
Date

# ATTACHMENT A

I.       **The Account(s)**

The Order applies to certain records and information associated with the following email accounts: ███████████████████████████████████████████

███████████████████

II.       **Records and Other Information to Be Disclosed**

GoDaddy, Inc. is required to disclose the following records and other information, if available, to the United States for the account or identifier listed in Part I of this Attachment ("Account"), for the time period inception of the account to present:

    A.     The following information about the customers or subscribers of the Account:

        1.     Names (including subscriber names, user names, and screen names);
        2.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
        3.     Local and long distance telephone connection records;
        4.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
        5.     Length of service (including start date) and types of service utilized;
        6.     Telephone or instrument numbers (including MAC addresses);
        7.     Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
        8.     Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.  All records and other information (not including the contents of communications) relating to the Account, including:

1.  Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2.  Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

3.  Forwarding e-mail address(es) for the Account

2

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by GoDaddy, Inc., and my official title is _____. I am a custodian of records for GoDaddy, Inc. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of GoDaddy, Inc., and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of GoDaddy, Inc.; and

    c.    such records were made by GoDaddy, Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____    _____
Date    Signature